STATE OF NORTH CAROLINA v. HECTOR ROSARIO, A/K/A HECTOR L. ROSARION, DEFENDANT

No. 8812SC621

(Filed 16 May 1989)

1. **Searches and Seizures § 21— search warrant—tip from confidential informant relayed by another officer—use not precluded**
      The fact that an affidavit supporting a search warrant in a narcotics case contained information from a confidential informant which was relayed by another officer did not preclude its use to establish probable cause where the affidavit stated that the other agent found that the informant had been reliable in the past, which entitled the affiant to rely on the informant's information.

2. **Searches and Seizures § 23— narcotics—affidavit supporting search warrant—probable cause**
      An affidavit supporting a search warrant in a narcotics prosecution was sufficient to establish probable cause where the affidavit directly implicated the premises as the delivery

point for drugs being transported from Florida; an accomplice who was assisting officers in the hope of obtaining a reduced sentence knew the defendant's phone number, knew the location of defendant's house, and was able to describe the house; police checked the accomplice's information before proceeding with the delivery and found it to be accurate; and the officers observed the accomplice enter the residence with a package of cocaine. Although the courier's credibility may be questioned because of his involvement in the crime and his cooperation with the police, he provided accurate and detailed information which was entirely consistent with information supplied by a confidential informant, and the fact that the package was supplied by the police does not affect the validity of the search because the package was merely a duplicate of the original.

**3. Narcotics § 4 — possession of cocaine supplied by law officers — evidence sufficient**

The trial court did not err by denying defendant's motion to dismiss cocaine trafficking charges where police in Florida intercepted an accomplice with a gift-wrapped box containing a kilogram of cocaine, the box was retained in Florida as evidence in that prosecution, the accomplice returned to North Carolina with DEA agents and delivered an identical box supplied by the SBI to defendant, and police officers searched defendant's house, finding the duplicate package, two other plastic bags of cocaine, a cocaine grinder, scales, and several documents.

**4. Conspiracy § 6 — narcotics — conspirator assisting police — evidence sufficient**

There was sufficient evidence of conspiracy to traffic in cocaine by delivery where defendant's accomplice went to Florida to obtain cocaine; was arrested in Florida with a gift-wrapped box containing a kilo of cocaine; agreed to assist officers in hope of obtaining a reduced sentence; told officers that he was to deliver the cocaine to defendant's house; the original box of cocaine remained in Florida as evidence in that prosecution; the accomplice was flown back to North Carolina with a DEA agent and supplied with a duplicate box containing cocaine by the SBI; and the accomplice delivered the cocaine to defendant's house.

STATE v. ROSARIO

[93 N.C. App. 627 (1989)]

**5. Narcotics § 4.3— constructive possession—evidence sufficient**

The evidence was sufficient to show defendant's actual or constructive possession of cocaine found in his house where defendant took a delivered package containing cocaine from a courier and placed it in his freezer, then removed it from the freezer and put it in the garbage can outside the house when he learned that police were in the area; smaller bags of cocaine were discovered between the mattresses of a bed being used by the son of a woman who lived with defendant; the woman testified that she had witnessed defendant sell cocaine in the house on numerous occasions; that she had often found cocaine in the house; that she had seen defendant use a cocaine grinder and scales; and that the cocaine found in her son's bed did not belong to her.

**6. Narcotics § 1.1— maintaining dwelling for selling controlled substance—evidence sufficient**

There was sufficient evidence to support the charge of intentionally maintaining a dwelling for the purpose of keeping and selling a controlled substance where it was not disputed that defendant maintained the house as his residence; and there was testimony concerning the delivery of a package of cocaine to the house, the discovery of other cocaine, a cocaine grinder, and scales in the house, and testimony from a woman who lived in the house concerning defendant's prior drug dealing. N.C.G.S. § 90-108(a)(7) and (b).

**7. Criminal Law § 34.8— trafficking in cocaine—prior criminal acts—admissible**

The trial court did not err in a prosecution involving trafficking in cocaine by admitting evidence concerning defendant's selling and using cocaine in his house and testimony from a witness who had previously sold cocaine for defendant where part of the testimony was clearly relevant to the charge of maintaining a dwelling for the purpose of keeping and selling a controlled substance and the testimony by defendant's dealer was admissible to prove intent, plan or knowledge. N.C.G.S. § 8C-1, Rule 404(b).

APPEAL by defendant from *Herring (D. B., Jr.), Judge.* Judgments entered 14 December 1987 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 24 January 1989.

Defendant was tried and convicted of conspiracy to traffic in cocaine by delivery, trafficking in cocaine by possession of 400 grams or more, trafficking in cocaine by possession of at least 28 but less than 200 grams, and intentionally maintaining a dwelling for the purpose of keeping or selling a controlled substance. The trial court consolidated the charges of trafficking by possession of more than 28 grams and maintaining a dwelling for keeping and selling a controlled substance for judgment and imposed a sentence of seven years thereon. For the other trafficking charge and the conspiracy charge the judgments imposed two concurrent sentences of thirty-five years beginning at the expiration of the seven-year term. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Karen E. Long, for the State.*

*Jones & McGlothlin, by Larry J. McGlothlin, for defendant-appellant.*

PARKER, Judge.

Defendant contends that the trial court erred in denying his motion to suppress the evidence seized during the search of his house, in denying his motion to dismiss the charges against him, in admitting certain evidence over his objections, and in refusing to instruct the jury on the defense of entrapment.

The State's evidence tended to show the following: On 13 January 1987, Eduardo Stewart discussed obtaining a kilogram of cocaine with defendant, Antonio Suarez, and Guillermo Gomez. The discussion took place in defendant's house in Fayetteville. On 18 January 1987, Stewart flew from Fayetteville to Miami, Florida to pick up the kilogram of cocaine. In Miami, Stewart met Guillermo Gomez and his brother, who were to supply the cocaine. The next day, the Gomez brothers procured the cocaine and gave it to Stewart in exchange for $12,000.00. The cocaine was packaged in a box and the box was gift wrapped. On the morning of 20 January 1987, the Gomez brothers drove Stewart to a train station where he boarded a train to Fayetteville. Upon boarding the train, Stewart was approached by two police officers who asked to search his baggage. Stewart consented to the search, and the officers arrested him upon discovering the cocaine.

Stewart agreed to assist the officers in the hope of obtaining a reduced sentence. He told the officers that he was to deliver the

STATE v. ROSARIO

[93 N.C. App. 627 (1989)]

cocaine to defendant's house. Stewart was flown back to Fayetteville in the company of a DEA agent. In Fayetteville, officers gave him a box wrapped exactly like the one that had been confiscated in Florida. The original box and its contents had been retained by the Florida police. The duplicate box contained approximately 900 grams of white powder containing cocaine in a concentration of approximately two percent. The cocaine in the duplicate box had been supplied by the SBI lab in Raleigh.

Police officers in Fayetteville placed a hidden microphone on Stewart's body and drove him to defendant's house in a cab. Stewart entered defendant's house with the duplicate package. Already in the house were defendant, Antonio Suarez, Kisha Fraizer, and Cathy Hendry. They were surprised to see Stewart because they had heard that he had been arrested. Stewart told Kisha Fraizer, who was his sister-in-law, that she should leave. He then gave the package to defendant, who put it in a freezer. Kisha Fraizer left with Suarez. Defendant then received a phone call by which he was informed that police had been seen in the area. Defendant removed the package from the freezer and placed it in a garbage can outside the house. About fifteen minutes after Suarez left, police officers came to the door. Defendant let them in the house and the officers searched the house pursuant to a warrant. In the course of the search, the officers found and seized the duplicate package, two other plastic bags containing cocaine, a cocaine grinder, scales, and several documents. Defendant, Stewart, and Cathy Hendry were all arrested. Defendant did not testify at trial, but he presented several witnesses who testified concerning his good character and reputation in the community.

I

[1] We first consider defendant's contentions concerning the motion to suppress. The police searched defendant's house pursuant to a warrant which recited that there was probable cause to believe that "papers, handwritings, receipts, travel tickets showing names of Rosario, Gomes [sic], Suarez, and [S]tewart and related items showing activities related to a plan to facilitate, transfer of narcotics, and controlled substances, cocaine" would be found on the premises. Defendant moved to suppress the evidence obtained pursuant to the warrant on the grounds that the affidavits in support of the warrant were insufficient to establish probable cause. The warrant was supported by two affidavits sworn to by Sergeant

Maxwell of the Cumberland County Sheriff's Department. The first affidavit contains information supplied by a confidential informant and relayed to Sergeant Maxwell by an agent of the Fort Bragg Drug Suppression Team. The second affidavit contains information supplied by Eduardo Stewart and relates the events leading up to Stewart's entry into defendant's house with the duplicate package.

Affidavits in support of search warrants sufficiently establish probable cause if they provide reasonable grounds to believe that the objects sought will be found on the premises to be searched and will aid in the apprehension or conviction of the offender. *State v. Rook*, 304 N.C. 201, 220, 283 S.E. 2d 732, 744 (1981), *cert. denied*, 455 U.S. 1038, 102 S.Ct. 1741, 72 L.Ed. 2d 155 (1982). Whether probable cause exists for the issuance of a warrant depends upon a practical assessment of the relevant circumstances in each particular case. *Id.*

The fact that the first affidavit contains information from a confidential informant that was relayed by another officer does not preclude its use to establish probable cause. *See State v. Estep*, 61 N.C. App. 495, 498, 301 S.E. 2d 398, 400, *disc. rev. denied*, 309 N.C. 463, 307 S.E. 2d 368 (1983). The affidavit states that the other agent found that the informant had been reliable in the past, which entitled the affiant to rely on the informant's information. *Id.* at 499, 301 S.E. 2d at 400. The affidavit contains statements to the effect that defendant was involved in an operation whereby the Gomez brothers would procure cocaine in Florida and transport it to defendant, who would distribute it to local dealers in the Fayetteville area. Defendant contends that the affidavit does not establish probable cause because it is conclusory and does not set forth specific facts to implicate the premises to be searched. *See State v. Rook*, 304 N.C. at 221, 283 S.E. 2d at 744-45.

[2] We need not decide whether the first affidavit, standing alone, establishes probable cause to search defendant's house. The second affidavit, based upon information supplied by Stewart, directly implicated the premises as the delivery point for drugs being transported from Florida. The affidavit states that Stewart knew defendant's phone number, knew the location of defendant's house, and was able to describe the house. Before proceeding with the delivery, the police checked Stewart's information and found it to be accurate. The affidavit further states that the officers observed Stewart enter the residence with the package of cocaine. Because the pack-

age itself is evidence of the crimes charged, the second affidavit clearly establishes probable cause to search the premises.

Defendant argues that the second affidavit cannot be used to support the warrant because Stewart was acting under police supervision and the package of cocaine was supplied by the police. In effect, he contends that the police created the probable cause to justify the search. We find little merit in this argument.

The present case is analogous to other "controlled delivery" cases in which authorities discover contraband in the mail and, rather than seizing the contraband immediately, allow it to proceed to its destination for the purpose of effecting an arrest of the addressee. *See, e.g., United States v. Outland*, 476 F. 2d 581 (6th Cir. 1973). In such cases, warrants to search the addressee's premises have been challenged on the grounds that the warrants are issued before the contraband reaches its destination. *See generally* 2 W. LaFave, Search and Seizure § 3.7(c) (1987). These "anticipatory" warrants, however, have almost universally been upheld. *Id. See, e.g., Outland, supra.* In the present case, the warrant was not issued until the package of cocaine was inside the premises, so the warrant cannot be challenged on the grounds that it is anticipatory. The present case differs from a typical controlled delivery case only in that (i) the delivery was accomplished by a courier involved in the crime rather than the postal service or a common carrier and (ii) the police substituted a prepared package for the original contraband.

Neither of these factors precludes the use of the second affidavit to establish probable cause. Although the courier's credibility may be questioned on account of his involvement in the crime and his motive for cooperation with the police, he provided accurate and detailed information which was entirely consistent with the information supplied by the confidential informant. The fact that the package was supplied by the police does not affect the validity of the search because the package was merely a duplicate of the original. The police did not materially alter the transaction, they simply allowed the original plan to be carried out. For purposes of establishing probable cause, the delivery of the package undoubtedly provided reasonable grounds to believe that evidence of the crimes charged would be found on the premises. We note that, even if the package contained no drugs, its delivery would still constitute evidence to support the charges of conspiracy and

maintaining a dwelling for the keeping and selling of a controlled substance.

## II

[3] We next consider whether the trial court erred in denying defendant's motion to dismiss the charges against him. Defendant first contends that the charges should have been dismissed because they are based upon possession of cocaine which was supplied by law officers. Only the charge of trafficking by possession of over 400 grams is even arguably subject to dismissal on these grounds. The lesser trafficking by possession charge is based upon possession of cocaine other than the drugs contained in the duplicate package. Possession is not an element of the offense of maintaining a dwelling for keeping and selling a controlled substance. Although the conspiracy charge is based upon the transaction involving the package, the conspiracy was complete when defendant agreed with others to do an unlawful act; no overt act was required to complete the crime. *See State v. LeDuc*, 306 N.C. 62, 75, 291 S.E. 2d 607, 615 (1982).

The question presented is whether defendant may be convicted for possession of a controlled substance when the substance was supplied by law officers. Defendant presents two theories to support his contention that his conviction cannot stand—(i) the cocaine having been supplied by the police, his possession of it was not unlawful, and (ii) the actions of the police constituted entrapment as a matter of law or outrageous conduct so as to require reversal of his conviction.

To support his first theory, defendant relies on *State v. Hageman*, 307 N.C. 1, 296 S.E. 2d 433 (1982). In *Hageman*, our Supreme Court held that a conviction for possession of stolen property could not be based upon possession of property that had been recovered by the police because, having been recovered, the property lost its status as stolen property. *Id.* at 10-11, 296 S.E. 2d at 439. We do not find *Hageman* to be controlling in this case. General Statute 90-95(h) provides that possession of specified amounts of controlled substances constitutes the offense of trafficking "except as otherwise provided in this Article." Law enforcement officers and their agents are authorized to possess controlled substances under G.S. 90-101(c)(5). Unlike stolen property, however, controlled substances do not lose their status as controlled substances merely because they are lawfully possessed. There is no provision in the

North Carolina Controlled Substances Act authorizing defendant's possession of the cocaine. Thus, his possession of the drugs constituted a crime under G.S. 90-95(h).

We next consider whether the actions of the officers in this case constituted entrapment or outrageous conduct so as to require reversal of defendant's conviction. Because defendant also contends that the trial court erred in failing to instruct the jury on the defense of entrapment, we shall also consider whether the facts of this case warranted such an instruction.

The actions of the police in this case clearly do not constitute entrapment as a matter of law, nor do the facts of this case support the submission of the defense of entrapment to the jury. Our Supreme Court has stated the law with regard to the defense of entrapment as follows:

> The defense of entrapment consists of two elements: (1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, (2) when the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities. . . . In the absence of evidence tending to show *both* inducement by government agents *and* that the intention to commit the crime originated not in the mind of the defendant, but with the law enforcement officers, the question of entrapment has not been sufficiently raised to permit its submission to the jury.

*State v. Walker*, 295 N.C. 510, 513, 246 S.E. 2d 748, 749-50 (1978) (citations omitted). The officers in this case did nothing to induce defendant's commission of the crimes charged. As in other controlled delivery cases, the officers did not initiate the crime, but merely monitored it in order to identify the participants. *See Chapman v. United States*, 443 F. 2d 917, 920 (10th Cir. 1971). The only affirmative act of the police with regard to the crimes charged was their substitution of the duplicate package for the original. Because the police merely allowed an ongoing crime to be completed, there is no factual basis to support the defense of entrapment.

Although our courts have not previously considered the question, the United States Supreme Court has held that the mere fact that government agents supply an ingredient for the commis-

sion of a crime does not constitute entrapment. *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed. 2d 366 (1973) (undercover agent supplied essential ingredient for manufacture of methamphetamine). In *Russell*, the Court also rejected the defendant's contention that the government's conduct was so outrageous that principles of due process precluded his conviction. *Id.* at 431-32, 93 S.Ct. at 1643, 36 L.Ed. 2d at 373. At least one court has refused to reverse convictions on the grounds of outrageous or unfair government conduct in a case where undercover agents supplied drugs in order to arrest the purchasers. *United States v. McCaghren*, 666 F. 2d 1227, 1230-31 (8th Cir. 1981). The court reasoned that the government agents did not initiate the criminal activity but merely entered an existing drug network as new suppliers. *Id.* at 1231.

In the present case, the government's conduct was not in any way outrageous or unfair. The officers did not alter the original transaction except for substituting a duplicate in place of the original package. Although defendant argues in his brief that the officers "secretly introduced cocaine" into his home, all the evidence tends to show that defendant knew what the package contained. We also find little merit in defendant's contention that there was no competent evidence to show that the original package contained cocaine. Although no scientific evidence was offered, the courier testified that the original box contained a kilogram of cocaine. This testimony, along with the surrounding circumstances, amply supports the inference that the original package contained drugs. *See United States v. Eakes*, 783 F. 2d 499, 504-06 (5th Cir.), *cert. denied*, 477 U.S. 906, 106 S.Ct. 3277, 91 L.Ed. 2d 567 (1986).

Assuming for purposes of argument that the original package did not contain cocaine, that fact would not require reversal. We emphasize that defendant's conviction must be based upon his *knowing* possession of the drugs. *See State v. Weldon*, 314 N.C. 401, 403, 333 S.E. 2d 701, 702 (1985). Therefore, the State cannot obtain a conviction by surreptitiously introducing drugs into a defendant's residence. The source of the cocaine is immaterial so long as defendant knowingly possessed it.

We recognize that, in this case, the officers controlled the amount as well as the nature of the controlled substance, and G.S. 90-95(h) provides greater penalties for possession of greater amounts. Law officers cannot be permitted to arbitrarily aggra-

STATE v. ROSARIO

[93 N.C. App. 627 (1989)]

vate an offense by increasing the amount of drugs they supply to a defendant. Here, however, the evidence shows that defendant planned to obtain a kilogram of cocaine, so we find no unfairness in the officers' actions. Moreover, the evidence shows that the original package was retained by police in Florida as evidence in their own investigation. Under these circumstances, the officers in this State cannot be faulted for utilizing the duplicate package. Our Supreme Court has recognized that, given the nature of drug trafficking, the State "may rightfully furnish to the plyers of this trade opportunity to commit the crime in order that they may be apprehended." *State v. Stanley*, 288 N.C. 19, 33, 215 S.E. 2d 589, 598 (1975). Accordingly, we find no error in the trial court's denial of defendant's motion to dismiss the charges against him on the grounds of entrapment or outrageous police conduct.

Defendant also contends there was insufficient evidence to support his other convictions. Much of defendant's argument in this regard is premised on the assumption that defendant's possession of the duplicate package was the result of outrageous government conduct and, therefore, is not competent evidence to support any of the charges. Because we have ruled that the actions of the police were not outrageous or unfair, defendant's arguments based upon this assumption are without merit.

[4] With regard to the conspiracy charge, defendant contends that the evidence was insufficient because (i) the alleged conspiracy involved the original package, which the State did not prove to contain cocaine and (ii) the conspiracy could not be based on the participation of the courier, who feigned his acquiescence to assist the police. These contentions are meritless. We have already noted that the conspiracy was completed at the moment defendant agreed to participate in the transaction. Because the agreement itself constituted the crime, what the package contained is not relevant to the offense. The agreement was reached before the courier was apprehended, so his acquiescence was not feigned at that time. Moreover, the agreement included parties other than the courier, so his participation is not essential to the charge. *See State v. Wilkins*, 34 N.C. App. 392, 400, 238 S.E. 2d 659, 665, *disc. rev. denied*, 294 N.C. 187, 241 S.E. 2d 516 (1977).

[5] Defendant next contends that there was insufficient evidence to show his actual or constructive possession of both the delivered package of cocaine and the smaller bags of cocaine upon which

the lesser trafficking charge was based. A defendant has possession of a controlled substance when he has both the power and intent to control its disposition and use. *State v. Harvey*, 281 N.C. 1, 12, 187 S.E. 2d 706, 714 (1972). The State's evidence showed that defendant took the delivered package from the courier and placed it in his freezer, and that he removed it from the freezer and put it in a garbage can outside the house when he learned that police were in the area. These facts sufficiently establish that defendant actually possessed the package and knew what it contained. The smaller bags of cocaine were discovered between the mattresses of a bed being used by the son of Cathy Hendry, who lived with defendant. Hendry testified that she had witnessed defendant sell cocaine in the house on numerous occasions; she often found cocaine in the house; she had seen defendant use the cocaine grinder and scales; and the cocaine found in her son's bed did not belong to her. All evidence showed that defendant had control of the premises. Thus, the evidence was sufficient to support an inference of constructive possession. *State v. Harvey, supra.*

[6] Defendant next argues that there was not sufficient evidence to support the charge of intentionally maintaining a dwelling for the purpose of keeping and selling a controlled substance. It is not disputed that defendant maintained the house as his residence. The delivery of the package of cocaine, the discovery of the other cocaine, the cocaine grinder, and the scales along with Hendry's testimony concerning defendant's prior drug dealing clearly constitute sufficient evidence to support a conviction under G.S. 90-108(a)(7) and (b). Accordingly, the trial court properly denied defendant's motion to dismiss the charges against him.

III

[7] Defendant's final argument is that the trial court erred in admitting evidence of his prior criminal acts. The evidence in question consists of Hendry's testimony concerning defendant's selling and using cocaine in the house and Eduardo Stewart's testimony that he had previously sold cocaine for defendant. Defendant contends that the evidence is inadmissible character evidence under Rule 404(b) of the N.C. Rules of Evidence.

Hendry's testimony is clearly relevant to the charge of maintaining a dwelling for the purpose of keeping and selling a controlled substance and, therefore, its admissibility is not governed by Rule 404(b). The admissibility of Stewart's testimony is gov-

erned by the Rule. In cases decided prior to the enactment of the Rules of Evidence, our courts have held that similar testimony was properly admitted to show a defendant's intent and plan to commit a conspiracy, *State v. Powell,* 55 N.C. App. 328, 331, 285 S.E. 2d 284, 286 (1982), and to show a defendant's guilty knowledge concerning drugs found on the premises. *State v. Weldon,* 314 N.C. at 404-07, 333 S.E. 2d at 703-05. Rule 404(b) provides that evidence of other crimes is admissible to prove intent, plan, or knowledge, and Stewart's testimony was probative on these issues.

Defendant further contends that, even if relevant, the evidence in question should have been excluded under Rule 403 because its probative value was outweighed by its prejudicial effect. We disagree. The evidence was not unfairly prejudicial to defendant and the trial court did not abuse its discretion in admitting the evidence. *See State v. Mason,* 315 N.C. 724, 731, 340 S.E. 2d 430, 435 (1986).

For the foregoing reasons, we find that defendant received a fair trial free of reversible error.

No error.

Judges EAGLES and LEWIS concur.