STATE OF NORTH CAROLINA v. BOBBY LEE SMITH

No. COA95-1003

(Filed 3 December 1996)

**1. Searches and Seizures §§ 118, 85 (NCI4th)— anticipatory search warrants—requirements**

The trial court erred in a prosecution for conspiracy to traffic in cocaine and trafficking in cocaine by denying defendant's motion to suppress evidence obtained through an anticipatory search warrant. Although anticipatory warrants are constitutionally permissible under both the North Carolina and federal constitutions, this warrant is defective under the North Carolina Constitution because the ultimate locus of the contraband could have been anywhere; there were no conditions governing execution of the warrant, so that the investigators rather than the issuing judge totally controlled the events giving rise to probable cause; the warrant was overly broad in that it did not ensure that the cocaine was on a sure course to the enumerated premises; and the warrant draws no nexus between the criminal activity, the circumstances of the intended seizure, and the premises. Anticipatory warrants must set out on their face explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; those triggering events must be ascertainable and preordained (meaning that the property is on a sure and irreversible course to its destination); and no search may occur unless and until the property does in fact arrive at that destination. N.C. Const. art. I, § 20.

**Am Jur 2d, Searches and Seizures § 119.**

**2. Searches and Seizures § 1 (NCI4th)— invalid warrant— North Carolina Constitution—no good faith exception**

Under North Carolina's Constitution, no good faith exception exists which might "save" the fruits of a search made pursuant to an invalidated warrant. Even if this case were decided on federal Fourth Amendment grounds, the good faith exception would not apply; where, as here, the State knew the plot, carefully developing the controlled drug delivery from start to finish, there is no excuse for not making the full script of events fully known to the magistrate through the affidavits presented to justify the warrant.

**Am Jur 2d, Searches and Seizures § 3.**

**State constitutional requirements as to exclusion of evidence unlawfully seized—post-*Leon* cases. 19 ALR5th 470.**

**3. Searches and Seizures § 28 (NCI4th)— controlled drug sale—no exigent circumstances**

No exigent circumstances were argued, nor should have been, in a prosecution for conspiracy and trafficking in cocaine, given that investigators exercised near absolute control over the contraband, conducted extensive human and electronic surveillance over the transaction, and received constant reports from an informant.

**Am Jur 2d, Searches and Seizures § 76.**

Appeal by defendant from orders entered 27 January 1994 and 14 April 1994 by Judge Robert L. Farmer in Wake County Superior Court, and judgments entered 30 September 1994 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 14 May 1996.

*Attorney General Michael F. Easley, by Special Deputy Attorney General John H. Watters, for the State.*

*Fisher Law Firm, P.A., by C. Douglas Fisher, for defendant appellant.*

SMITH, Judge.

Defendant appellant Bobby Lee Smith was convicted of conspiracy to traffic in cocaine and trafficking in cocaine by possession and received active terms to be served consecutively. Defendant appeals,

contending the trial court erred in denying his motions to suppress evidence obtained pursuant to execution of an anticipatory search warrant. We conclude that although the North Carolina Constitution does not preclude the use of anticipatory search warrants, the warrant here was constitutionally infirm. On this basis we reverse.

In the fall of 1991, investigators from the State Bureau of Investigation (SBI) and the Wake County Sheriff's Department (collectively, the investigators) targeted defendant and William Patrick Parra (Parra) as subjects of an undercover drug investigation. The investigators suspected defendant and Parra were confederates engaged in the distribution of cocaine. Over time, the investigators were successful in gathering evidence against David Lloyd Thompson (Thompson), who would at various times purchase cocaine from, and sell cocaine to, defendant and Parra.

The investigators confronted Thompson with evidence against him, and asked him to cooperate with their investigation against defendant and Parra. Thompson agreed and began a series of contacts with Parra, during which he would wear a body transmitter (a "wire"). On 22 January 1993, Thompson went to Parra's residence, at which time Parra expressed his desire to obtain a kilogram of cocaine for resale. To facilitate the drug transaction, the investigators obtained a kilogram of cocaine from the evidence locker of the SBI and initiated plans for a "supply and buy" transaction between Thompson and Parra.

Once the arrangements for the cocaine were in place, Thompson called Parra (under supervision of the investigators) and told him that delivery could take place at a time and place of Parra's choosing. Parra decided to take delivery on 29 January 1993. However, this delivery date was aborted by the investigators because they were unprepared to react so quickly. Since Parra was to choose the delivery site, the investigators developed four separate contingency plans for places they believed the transaction might occur.

With the contingency plans in place, Thompson returned to Parra's residence to make plans for delivery. On 12 February 1993, Thompson phoned Parra to indicate his readiness to deliver the cocaine. On 14 February 1993, Thompson phoned Parra to arrange an initial meeting location, and plans were made to conduct the purchase the next day (15 February 1993) at Wilsonville Crossroads near the border between Wake and Chatham Counties.

At 8:00 p.m. on 14 February 1993, Wake County Sheriff's Detective T.A. Coleman (Coleman) and Rebecca A. Waters (Waters), a Wake County Assistant District Attorney, went to the home of Donald W. Stephens, Superior Court Judge. Coleman and Waters applied for, and Judge Stephens issued, a search warrant. The affidavit for the warrant included, in pertinent part, the following statement dealing with probable cause:

10. *On February 15, 1993, I received information from a confidential informant who, within the past seventy-two hours had observed a quantity of cocaine located in the residence of BOBBY "BOB" LEE SMITH* located on Old Lystra Road, Orange County, North Carolina. . . . Based on my training, experience and evidence gathered through this investigation, I have the opinion that this informant's information is correct and accurate.

(Emphasis added.)

The warrant authorized the investigators to search appellant's residence for, *inter alia,* records of drug sales, drugs and drug paraphernalia, currency, and documents related to the ownership and use of his home. The affidavit was written in the present or past tense, and in no way expresses that it is "contingent," or in "anticipation" of future events.

On the morning of 15 February 1993, the investigators positioned surveillance teams at the Wilsonville Crossroads area in the woods surrounding the homes of defendant and Parra, and in the air via an SBI airplane. The investigators also established an elaborate set of signals for the informant Thompson to use at various points of the intended transaction. For instance, once the transaction occurred, Thompson was to remove his cap and turn on the headlights of his car. And, using the body transmitter, Thompson was to inform the investigators of any last minute information or changes in plans.

Thompson, followed by the investigators, met Parra at the Wilsonville Crossroads. Thompson pulled beside Parra's vehicle, and they remained there and conversed for three to five minutes. Parra then left the crossroads, and Thompson followed. While under constant surveillance, Parra led Thompson to defendant's residence in Orange County. Defendant was outside when Thompson and Parra arrived, and defendant welcomed them into a fenced-in area on defendant's property.

STATE v. SMITH

[124 N.C. App. 565 (1996)]

Parra, Thompson and defendant then entered a shop on defendant's premises, whereupon Thompson produced the cocaine, and money was exchanged for the drugs. Parra provided Thompson with one thousand dollars, and defendant provided ten thousand dollars. Once Thompson left the shop, he took off his hat—per the prearranged signal—and alerted the investigators (via the body microphone) that no one else was present in the building, and that he had seen no weapons. On Thompson's signal, the investigators entered the shop, searched it, recovered the cocaine and numerous other items, and placed Smith under arrest.

Defendant was indicted on three drug-related counts. Defendant's pretrial motions to suppress (pursuant to N.C. Gen. Stat. § 15A-971 (1988)), on state and federal constitutional grounds, and statutory grounds, were denied. At trial, the items seized, including the cocaine, were used as evidence to convict defendant for conspiracy to traffic in cocaine and trafficking in cocaine by possession. From these convictions, defendant appeals.

## A. Analysis

[1] Both the State and defendant agree that the warrant at issue was "anticipatory," meaning it was "issued in advance of the receipt of particular property at the premises designated in the warrant . . . ." *U.S. v. Ricciardelli*, 998 F.2d 8, 10 (1st Cir. 1993). However, the parties part company on the issue of whether the anticipatory warrant issued by Judge Stephens passes constitutional muster. Seeing that no North Carolina precedent exists defining and explicating the use of anticipatory warrants, we turn to the federal circuit courts for guidance. Based on our review of the existing federal law regarding anticipatory warrants, we find the law on the subject reasonably settled, and reverse the trial court's denial of defendant's motion to suppress. Accordingly, we reverse defendant's convictions.

### I. Anticipatory Search Warrants.

Our research reveals that the issue of anticipatory search warrants has been visited but once by a North Carolina court, in *State v. Rosario*, 93 N.C. App. 627, 633, 379 S.E.2d 434, 437, *disc. review denied,* 325 N.C. 275, 384 S.E.2d 527 (1989). There, this Court noted in dicta that " 'anticipatory' warrants . . . have almost universally been upheld." *Id.* Our review of the federal circuits accords with the conclusion of the *Rosario* Court, that there is no Fourth Amendment infirmity "indigenous to anticipatory search warrants—although such

warrants must, of course, be issued under proper circumstances, upon a proper showing, and with proper. safeguards." *Ricciardelli,* 998 F.2d at 11 (reviewing the general approval of such warrants by seven other federal circuits); and *see U.S. v. Garcia,* 882 F.2d 699, 702-03 (1989) (surveying state and federal jurisdictional rulings on anticipatory warrants), *cert. denied,* 493 U.S. 943, 107 L.Ed.2d 336 (1989).

Defendant's constitutional challenge to the instant anticipatory warrant proceeds under the Fourth and Fourteenth Amendments to the federal constitution, and article I, section 20 of the North Carolina Constitution. Because we decide this case on adequate and independent state grounds, and because in this instance our state constitution affords a greater protection to defendant, we decline to apply our analysis to the rights prescribed by the federal constitution. *See State v. Carter,* 322 N.C. 709, 712, 370 S.E.2d 553, 555 (1988). Although our courts have not always agreed about the relationship between our constitution's article I, section 20 provision and its federal counterpart the Fourth Amendment, the *Carter* Court made it clear that the two provisions are not substantively identical—nor are they perfectly parallel as to the rights they bestow. "The framers of our constitution sought to check the tendency of government to overreach by placing a constitutional mantle around the right to privacy in one's person, home and effects." *Carter,* 322 N.C. at 718, 370 S.E.2d at 558. Thus, federal cases cited or discussed in this opinion only serve as points of reference, and in no way compel or control the result we reach. *Id.;* and *see Michigan v. Long,* 463 U.S. 1032, 1041, 77 L.Ed.2d 1201, 1214 (1983).

In general, the standard for a court reviewing the issuance of a search warrant is " 'whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.' " *State v. Ledbetter,* 120 N.C. App. 117, 121, 461 S.E.2d 341, 343 (1995) (quoting *Massachusetts v. Upton,* 466 U.S. 727, 728, 80 L.Ed.2d 721, 724 (1984)). The judicial official's decision pivots on whether the affidavits submitted to her supply probable cause that the illegal item[s] or evidence sought will be at the premises described *when the search warrant is executed. State v. Arrington,* 311 N.C. 633, 636, 319 S.E.2d 254, 256 (1984) (citing *State v. Riddick,* 291 N.C. 399, 230 S.E.2d 506 (1976)); *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir. 1988), *cert. denied,* 490 U.S. 1005, 104 L.Ed.2d 155 (1989). Our statutes restrict the information a magistrate may utilize in making the probable cause determination. No "information other than that

STATE v. SMITH

[124 N.C. App. 565 (1996)]

contained in the affidavit may . . . be considered . . . unless the information is either recorded or contemporaneously summarized in the record [of the court] or on the face of the warrant by the issuing official." N.C. Gen. Stat. § 15A-245(a) (1988).

The problem presented by an anticipatory warrant is that it is not based on present probable cause, but on the expectancy that, at some point in the future probable cause will exist. The probable cause component of the North Carolina Constitution reads:

> General warrants, whereby any officer or other person may be commanded to search suspected places *without evidence of the act committed,* or to seize any person or persons not named, *whose offense is not particularly described* and supported by evidence, are dangerous to liberty and shall not be granted.

N.C. Const. art. I, § 20 (emphasis added). Despite the above statement, our constitution does not require that the objects of the search be in the place searched at the time a warrant issues. Instead, there need only be "probable cause to believe that a crime has been [or is being] committed and that evidence of it can likely be found at the described locus *at the time of the search." Ricciardelli,* 998 F.2d at 10; and see *Illinois v. Gates,* 462 U.S. 213, 238, 76 L.Ed.2d 527, 548 (1983) (mandating "a fair probability that contraband . . . will be found in a particular place".)

In addition, we note N.C. Gen. Stat. § 15A-231 (1988) provides:

> Constitutionally permissible searches and seizures which are not regulated by the General Statutes of North Carolina are not prohibited.

The official commentary to § 15A-231 further states "[t]his Article makes clear that common-law search powers not regulated by the General Statutes are not thereby prohibited . . . [e.g.,] searches incident to arrest, frisks incident to lawful confrontation and emergency searches."

Now, then, the real issue is not whether a forward-looking warrant may properly issue, for we know that it may. Rather, we must ascertain how such a warrant may issue while maintaining the constitutional role of the neutral and detached magistrate "as a buffer between a citizen's privacy rights and potential government overreaching . . . ." *Ricciardelli,* 998 F.2d at 10. It is upon this neutral and detached magistrate that we impose the responsibility of making the call of probable cause—for this authority may not be delegated to the

very law enforcement officials seeking the right to search. *See Garcia*, 882 F.2d at 703. The implicit concern with anticipatory warrants is the fact "that any warrant conditioned on what may occur in the future presents some potential for abuse." *Id.*

The crucial constitutional concern here is one of discretion. A generally drawn anticipatory warrant amplifies the discretion of the searching officer while minimizing that of the magistrate. If the party seeking the search may create the circumstances which create the probable cause, which then justify the warrant itself, the magistrate is removed (by this logic) from his constitutionally mandated role. *See United States v. Hendricks*, 743 F.2d 653, 654 n.1 (9th Cir. 1984) ("The fact that the agents created the probable cause (if any) to search the house is analogous to a situation where police create exigent circumstances and then use the existence of those exigencies to justify a search"), *cert. denied*, 470 U.S. 1006, 84 L.Ed.2d 382 (1986). Not surprisingly, the circuits which have allowed anticipatory warrants have done so only within carefully circumscribed constraints. *Ricciardelli*, 998 F.2d at 12-13; *Garcia*, 882 F.2d at 702-03. With these concerns in mind, we establish the following rules regarding anticipatory warrants.

While the United States Supreme Court has yet to visit the anticipatory warrant issue, the vast majority of the federal circuits have. Among those there appears a general agreement as to what constitutes a constitutionally sound anticipatory warrant. *Garcia*, 882 F.2d at 703. An anticipatory warrant must set out, on its face, conditions that are " 'explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents.' " *Ricciardelli*, 998 F.2d at 12 (quoting *Garcia*, 882 F.2d at 703-04). The magistrate must ensure that the "triggering events"—those events which form the basis for probable cause—are "both ascertainable and preordained." *Ricciardelli*, 998 F.2d at 12.

The warrant must minimize the officer's discretion in deciding whether or not the "triggering event" has occurred to "almost ministerial proportions." *Id.* This means the events which trigger probable cause must be specified in the warrant to a point "similar to a search party's discretion in locating the place to be searched." *Id.* Next, we adopt the standard which has become nearly universal among the federal circuits, which is the "sure and irreversible course to destination" rule. *Ricciardelli*, 998 F.2d at 12-13. Under this rule, the contraband must be on a sure, irreversible course to the situs of the intended search, and any future search "of the destination must be

made *expressly* contingent upon the contraband's arrival there." *Id.* at 12 (emphasis added).

The sure course rule is a stand-in for the actual presence of the illegal item at the locus to be searched. *Garcia*, 882 F.2d at 703. This proxy for actual presence ensures that no undue delegation of the power to find probable cause passes from magistrate to government agent. Only by way of the sure course standard can we ensure that the contraband, though not yet at the location of the intended search, will almost certainly be there at the time of the search. *Id.*; *Ricciardelli*, 998 F.2d at 13; and *see United States v. Hale*, 784 F.2d 1465, 1468 (9th Cir.) (finding a warrant for child pornography that was to be mailed to defendant at his home to be "on a sure course to its destination" and, hence, valid), *cert. denied*, 479 U.S. 829, 93 L.Ed.2d 59 (1986).

The important privacy interests served by article I, § 20 create the imperative of a nexus between the criminal act itself, the evidence to be seized, and the identity of the place to be searched—and there must exist a temporal confluence of all three of these factors. *See Ricciardelli*, 998 F.2d at 13; *State v. Ellington*, 284 N.C. 198, 203, 200 S.E.2d 177, 180-81 (1973) (warrants must be premised on enough reliable information to ensure that no "fishing expedition[s]" will occur). "This means that affidavits supporting the application for an anticipatory warrant must show [on their face], not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery." *Garcia*, 882 F.2d at 703. Then, the magistrate must list, on the face of the warrant, the explicit conditions which must occur before execution of the warrant may take place. *Id.* at 703-04.

The instant warrant falls woefully short of the above standards in nearly every material way. The most glaring deficiency of this warrant is the absolute lack of language denoting it as "anticipatory." Without going outside the four corners of the warrant (which, as we have stated, we cannot), there is no way a reviewing court could determine that this was anything more than a run-of-the-mill warrant. The State seems to concede this point, by directing us to Detective T.A. Coleman's suppression hearing testimony, where the detective stated that the "search warrant was an anticipatory warrant based upon an expected delivery of one kilogram of cocaine to the residence of the defendant on February 15th." One wonders why this

statement cannot be found in the affidavits. The 15 February date in the affidavit has significance, the State argues, because the warrant was actually authorized on the evening of 14 February. In fact, the State's entire case appears to revolve around this clerical bulwark.

Judge Robert L. Farmer, while denying the motion to suppress, nonetheless apparently had significant reservations about the warrant's lack of markers denoting its anticipatory nature. The trial court, ruling on the motion, in part stated:

> (4) This Court specifically finds and concludes that *although the affidavit could have been worded in such a way as to make it clear that Detective Coleman* anticipated *that a confidential informant would provide him with information on February 15, 1993, concerning the presence of cocaine at the defendant's residence and why he expected to receive this information,* the wording of paragraph 10 of the affidavit was in no way an attempt to mislead or provide false information to a judicial official either willfully or otherwise.

(Emphasis added and in original.) Point for point, this finding and conclusion contradicts the ruling of the *Garcia* court. *Garcia,* 882 F.2d at 703-04. Quite simply, the affidavits do not so much as hint that a controlled delivery, or reverse sale, was to occur. The affidavits do not mention how the delivery would occur, that delivery to defendant was but an expectation (to take place, hopefully, on 15 February) or that the "sting" was an operation run and wholly controlled by the State. *Id.*

Equally troublesome is the statement in the affidavit that "within the past seventy-two hours [the informant] had observed a quantity of cocaine in the residence of Bobby 'Bob' Lee Smith . . . ." The investigators knew, at the time the warrant was applied for, that these events (if they occurred) would happen within the *next* 24 hours— not within the past 72 from the date of 15 February. Manifestly, there is nothing "explicit, clear, [or] narrowly drawn so as to avoid misunderstanding" about this warrant. *Ricciardelli,* 998 F.2d at 12. On the basis of the instant affidavits, it would have been impossible for the judge issuing the warrant to "ensure that the triggering event[s] [were] both ascertainable and preordained." *Ricciardelli,* 998 F.2d at 12.

The instant warrant, on its face, shows that it is unconditional— as it overlooks (*inter alia*) the "need for establishing a nexus

between the triggering event and the place to be searched." *Id.* at 13; and *see United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir. 1982) (finding the requirement for a nexus met where defendant boarded an airplane and agents then procured a warrant to search him at the flight's *terminus).* The Ninth Circuit encountered a similar nexus problem in *Hendricks,* 743 F.2d at 654-55. In *Hendricks,* a package containing contraband was shipped from Brazil to a Los Angeles airport in a manner requiring defendant Hendricks to pick it up personally (the package was addressed to Hendricks). *Id.* at 653. A customs officer inspecting the package found several pounds of cocaine in a suitcase within the package.

The *Hendricks* warrant read as follows:

"[O]n the premises known as 2835 N. Sidney . . . *there is now being concealed* . . . a . . . cardboard box [containing cocaine]" . . . "this search warrant is to be executed only upon the condition that the above described box *is brought* to the aforesaid premises . . . ."

*Id.* at 654 (emphasis in original). The *Hendricks* Court found this information insufficient to forge the requisite link between the described premises and the illegal activity, based on the following syllogistic logic. *Id.* at 654, 655; and *see Ricciardelli,* 998 F.2d at 13 (analyzing, and agreeing with, the *Hendricks* decision). The *Hendricks* Court instructs:

If the suitcase had been in the house [of the defendant], or if probable cause existed to believe it was there, issuance of the warrant would have been proper. However, at the time the warrant was issued, the magistrate *knew* the suitcase was in the possession of the agents, not at the house. The agents, by calling Hendricks to come for the suitcase tried to ensure that the condition subsequent inserted into the warrant would happen. *However, at the time the warrant issued and, in fact, until the suitcase was actually brought to the house, there was no certainty that it would ever be brought there.*

*Hendricks,* 743 F.2d at 654 (emphasis added). The upshot of the *Hendricks* analysis is that, although the warrant there denominated a certain location to be searched, once the suitcase was retrieved (presumably by Hendricks) "any number of circumstances might intervene to snuff out a future connection between it and the premises." *Ricciardelli,* 998 F.2d at 13-14.

In many respects, the instant case is parallel to *Hendricks*. Here, as in *Hendricks*, the ultimate locus of the contraband could have been anywhere. Since Parra was to make the decision as to where the drug transaction would occur, the State admits in its brief that the investigators could only guess as to where they might end up. In *Hendricks*, the conditions governing execution of the warrant were too broadly drawn; here there were no conditions whatsoever. Thus the investigators totally controlled the events giving rise to probable cause—not the issuing judge. Here, like *Hendricks*, the warrant was overly broad in that it did not ensure that the cocaine was on a sure course to the enumerated premises. And finally, the warrant draws no nexus between the criminal activity, the circumstances of the intended seizure, and the premises. Seeing no meaningful distinction between this case and *Hendricks*, it follows that this warrant is invalid.

## II.  The Good Faith Exception and Exigent Circumstances.

[2] The State has not argued that, in the event the warrant was invalidated upon review, the evidence should not be excluded because the search was made pursuant to a good faith execution of the warrant, or alternatively, because exigent circumstances justified a warrantless search (even though Judge Farmer referred to such matters in his findings and conclusions in his rulings on the motions to suppress). Quite possibly, the absence of such arguments is due to the fact that neither are applicable to these facts or the North Carolina constitutional law applied herein. *Carter*, 322 N.C. at 714-16, 370 S.E.2d at 556-57.

The holding of the *Carter* Court mandates exclusion of evidence obtained via an invalid warrant. *See Carter*, 322 N.C. at 723-24, 370 S.E.2d at 561-62. Moreover, under North Carolina's Constitution, no good faith exception exists which might "save" the fruits of a search made pursuant to an invalidated warrant. *Carter*, 322 N.C. at 724, 370 S.E.2d at 562. Even if this case were decided on federal Fourth Amendment grounds, the good faith exception would not apply. *See State v. Welch*, 316 N.C. 578, 588-89, 342 S.E.2d 789, 794-95 (1986). As the *Ricciardelli* Court noted, failure of the investigators to request explicit conditions within the warrant and "to recognize the consequences of [their] omission constitute[s] objectively unreasonable conduct." *Ricciardelli*, 998 F.2d at 16. The *Ricciardelli* Court found that a "search warrant bereft of . . . limiting condition[s] [falls] 'outside the range of professional competence expected' " of government

agents. *Ricciardelli*, 998 F.2d at 16 (quoting *Malley v. Briggs*, 475 U.S. 335, 346 n.9, 89 L.Ed.2d 271, 281 n.9 (1986)). Indeed, where, as here, the State knew the plot, carefully developing the controlled delivery from start to finish, there is no excuse for not making the full script of events fully known to the magistrate through the affidavits presented to justify the warrant.

[3] As for exigent circumstances, none are argued, and none should be. *See, e.g., Carter*, 322 N.C. at 714, 370 S.E.2d at 556. Given that the investigators exercised near absolute control over the contraband here, conducted extensive human and electronic surveillance over the transaction, and received constant reports from informant Thompson, this argument would not survive.

### III. Conclusion.

Although anticipatory warrants are constitutionally permissible under both the North Carolina and federal constitutions, the instant warrant is fatally defective under N.C. Const. art. I, § 20. Nothing in either the constitution or the statutes of this state precludes the issuance of an anticipatory search warrant—so long as there is probable cause to believe that contraband presently in transit will be at the place to be searched at the time of the execution of the warrant. However, this type of warrant presents an acute possibility of abuse because it is conditioned on the occurrence of a future event, and thus potentially opens the door for the exercise of discretion by those executing the warrant. *See Ricciardelli*, 998 F.2d at 12. Therefore, we wish to reemphasize that anticipatory warrants are subject to the following important restrictions.

The magistrate who issues an anticipatory search warrant must take particular care to eliminate the opportunity for government agents to exercise unfettered discretion in the execution of the warrant. Such vigilance is achieved by observing the following three requirements: (1) The anticipatory warrant must set out, on its face, explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; (2) Those triggering events, from which probable cause arises, must be (a) ascertainable, and (b) preordained, meaning that the property is on a sure and irreversible course to its destination; and finally, (3) No search may occur unless and until the property does, in fact, arrive at that destination. These conditions ensure that the required nexus between the criminal act, the evidence to be seized, and the identity of the place to be searched is achieved. Only where the magistrate has crafted the anticipatory

search warrant with "explicit, clear, and narrowly drawn conditions governing its execution" are the constitutionally protected privacy interests safeguarded. *Id.* at 12.

Furthermore, under our state constitutional analysis, no good faith exception applies. *Carter,* 322 N.C. at 724, 370 S.E.2d at 562. Accordingly, defendant's motion to suppress the fruits of the search should have been granted. We remind those who find the price of our constitutional exclusionary rule too high that, "North Carolina . . . justifies its exclusionary rule not only on deterrence but upon the preservation of the integrity of the judicial branch of government and its tradition[s] . . . [and] the expressed public policy of the state." *Carter,* 322 N.C. at 723, 370 S.E.2d at 561.

The record in the instant case reveals sufficient evidence apart from that seized in the illegal search upon which a jury could convict defendant of the offenses charged. However, we must reverse defendant's convictions. On remand, the evidence seized pursuant to the search warrant must be suppressed.

New trial.

Judges EAGLES and WYNN concur.