STATE OF NORTH CAROLINA v. DARRYL STALLINGS

No. COA07-729

(Filed 18 March 2008)

**Search and Seizure— anticipatory search warrant—motion to suppress evidence**

The trial court did not err in a trafficking in marijuana case by denying defendant's motion to suppress evidence obtained at his home as a result of the execution of an anticipatory search warrant, because the warrant was obtained in a manner consistent with the reasoning adopted from the two-part test set out in *Wisconsin v. Falbo*, 526 N.W.2d 814 (1994), and the already-established three-part test outlined in *State v. Smith*, 124 N.C. App. 565 (1996). Similar to the *Falbo* case in regard to the affidavit and information before the trial court, the police were able to independently confirm a number of statements an informant made, the trial court had information before it as to the informant's year-long history of purchasing drugs from defendant, and police officers testified that they considered this information reliable. Per *Smith*, the warrant contained clear triggering events, those events were ascertainable and preordained, and no search took place until after those triggering events occurred.

Appeal by defendant from judgment entered 12 September 2006 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 12 December 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathleen Mary Barry, for the State.*

*Mark Montgomery for defendant-appellant.*

HUNTER, Judge.

Darryl Stallings ("defendant") pled guilty to trafficking in marijuana, reserving the right to appeal the denial of his motion to suppress certain evidence. The trial court entered judgment on 12 September 2006 pursuant to his plea and sentenced him to twenty-five to thirty months' imprisonment. Defendant now appeals the denial of his motion to suppress. After careful review, we affirm the trial court's ruling.

## I.

On 22 September 2005, Detective H.N. Sampson[1] of the Guilford County Sheriff's Department applied for and was granted a search warrant for the home of defendant in Greensboro. The basis for the warrant was information from a confidential informant, who stated that he had purchased marijuana from defendant at defendant's home over the period of a year. The affidavit submitted with the warrant states: "This applicant is applying for an ANTICIPATORY search warrant. Authority for the search contained in the warrant will not commence until the below specified conditions occur within the forty-eight hour life of the warrant." Those conditions were as follows:

On 9/22/2005, a confidential source will arrive at 2207 Cabin Court, Greensboro[,] North Carolina[,] for the purpose of purchasing marijuana. The confidential source will be at this residence for the purpose of purchasing several pounds of marijuana from a subject known to us as Darryl Stallings. Once the confidential source sees the marijuana being displayed at the residence, he/she will give a prearranged signal that the marijuana has been seen.

If the marijuana is successfully seen by the confidential source, the affiant contends there is probable cause to believe that a search of the residence of 2207 Cabin Court, Greensboro[,] North Carolina[,] will result in the discovery of additional controlled substances, evidence of occupancy and other related material[.]

On 22 September 2005, the informant went to defendant's home, followed by the police. The informant entered the house, then signaled to the police officers outside that he had seen marijuana inside. The officers then entered the house and discovered more than twenty pounds of marijuana. Defendant was charged with one count of trafficking in marijuana. After the denial of his motion to suppress the evidence obtained at his home, he entered a plea of guilty. He now appeals from the denial of his motion.

---

1. We note that while the application for the search warrant begins "I, Detective H.N. Sampson, of the Guilford County Sheriff's Department," the name signed in the space titled "Signature of Applicant" is that of Detective A.D. Phillips. On the search warrant itself, Detective Sampson is named as the applicant and both Detective Phillips and T. Harbour of the Eden Police Department are listed as "Additional Affiant[s]."

II.

A.

Both parties agree that the search warrant at issue was anticipatory; indeed, as noted above, the affidavit states plainly that the application is for an anticipatory warrant.

> Anticipatory search warrants are "issued in advance of the receipt of particular property at the premises designated in the warrant[.]" Issuance of an anticipatory warrant is "based on a showing of future probable cause to believe that an item will be at a specific location at a particular time in the near future."

*State v. Phillips,* 160 N.C. App. 549, 551, 586 S.E.2d 540, 542 (2003) (citations omitted). This definition is more easily understood when considering the prototypical anticipatory search warrant situation: A package is discovered en route to its destination to contain an illegal substance. The knowledge that this package is to be delivered to certain premises serves as probable cause on which an anticipatory search warrant can be based. The warrant may only be executed once the package arrives, because until that time, there is no probable cause to enter the premises.

This Court has set out a three-part test for the constitutionality of such warrants as follows:

> (1) The anticipatory warrant must set out, on its face, explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; (2) Those triggering events, from which probable cause arises, must be (a) ascertainable, and (b) preordained, meaning that the property is on a sure and irreversible course to its destination; and finally, (3) No search may occur unless and until the property does, in fact, arrive at that destination.

*State v. Smith,* 124 N.C. App. 565, 577, 478 S.E.2d 237, 245 (1996).

B.

As we have noted, and as the State admits, this is not the typical anticipatory search warrant situation; normally, such warrants are issued in the delivery situation outlined above. *See, e.g., Phillips,* 160 N.C. App. at 551, 586 S.E.2d at 542. Indeed, this Court has not before considered a case where an anticipatory search warrant was issued in this type of situation, and as such, the three-part test outlined above

makes little sense when applied to these facts. Wisconsin's court of appeals has considered this precise situation, however, and that opinion provides helpful guidance.[2]

In *Wisconsin v. Falbo*, police obtained a search warrant based on information from an informant who stated that he made weekly trips to the defendant's residence to purchase cocaine. *Falbo*, 526 N.W.2d 814, 815 (1994). The search warrant stated on its face that it would be valid only if certain events occurred, specifically the arrival at the residence of a certain car and certain persons. *Id.* at 816. When those events occurred, the officers would be able to search the car, and if illegal drugs were found, they would then be able to search the residence. *Id.* The search warrant also stated that it was only good for "the afternoon and evening hours" of a specific day. *Id.* While the house was under surveillance that day, the specified events occurred, and police executed the search warrant, finding cocaine and THC in the residence. *Id.*

The defendant argued to the appeals court that the search warrant should not have been issued because an anticipatory search warrant is only valid for a specific situation—namely, where contraband is known to be in route to a certain residence. *Id.* at 817. The court disagreed, stating that the "sure course of delivery" component of the test for such warrants "merely serves as a way to show probable cause that the contraband will be at the residence at the time of the search." *Id.* The court then stated that their examination of such a search warrant for validity encompassed two questions:

First, we determine whether the probable cause affidavit established circumstances from which the affiant could conclude that the information was reliable. . . .

---

2. The Court of Appeals of Virginia has also considered this issue, but its opinion in the case was unpublished. We note, however, that its holding is in accord with that of Wisconsin. *See Morton v. Commonwealth*, No. 2938-04-2, 2006 Va. App. LEXIS 208 (Va. Ct. App. May 16, 2006). In *Morton*, the court takes its reasoning directly from *United States v. Grubbs*, 547 U.S. 90, 164 L. Ed. 2d 195 (2006), utilizing a two-part test: First, whether the property at issue was likely to be at the location after a triggering event, and second, whether there is probable cause to believe the triggering event will in fact occur. *Morton* at *12-*15. This test is taken directly from *Grubbs*, where the two prerequisites were described thus: "It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' but also that there is probable cause to believe the triggering condition *will occur*." *Grubbs*, 547 U.S. at 96-97, 164 L. Ed. 2d at 204 (citation omitted). This two-part test is, essentially, a shorter version of the test set out by this Court in *Smith, supra*, although this Court did not rely on the reasoning of *Grubbs* in that opinion.

> Secondly, we decide whether the trial court had enough informa-
> tion upon which to determine that the underlying circumstances
> or manner in which the informant obtained his or her information
> was reliable.

*Id.* at 817-18. As to the first question, the court emphasized the fact that the police were able to independently verify certain pieces of information provided by the informant: The type of car a certain party owned, where that party lived, and the defendant's address. *Id.* As to the second question, the court examined the evidence provided to the court by the police in the affidavits for indications that the informant had obtained the information in a reliable manner; given the inform-ant's firsthand participation in the actual buy and the informant's information on an accomplice's movements, the court found that the "trial court had enough information upon which to determine that the underlying circumstances or manner in which the informant obtained his or her information was reliable." *Id.* at 818.

## C.

The facts in the case at hand differ materially from the usual sce-nario in which an anticipatory warrant is issued. As such, the more appropriate legal framework for this situation seems to this Court to be a combination of our already-established three-part test outlined in *Smith*, which is tailored to the usual scenario, and the two-part test set out above from *Falbo*, as it is directly on point and thus more pre-cise guidance for this scenario. The two tests are in fact complemen-tary, as they cover the two portions of the warrant process: *Falbo* concerns obtaining the warrant, the first part, and *Smith* concerns the contents of the warrant once obtained and the manner of its exe-cution, the latter portion.

*Falbo* presents two issues regarding obtaining a warrant to a reviewing court: First, whether the affidavit supporting the warrant "established circumstances from which the affiant could conclude that the information was reliable"; and second, whether the trial court authorizing the warrant had sufficient information before it to determine that "the underlying circumstances or manner in which the informant obtained his or her information was reliable." *Falbo*, 526 N.W.2d at 817-18.

*Smith* then presents three issues as to the warrant's contents and execution to a reviewing court; excising the more specific language in the test makes it clearly applicable to the case at hand:

(1) The anticipatory warrant must set out, on its face, explicit, clear, and narrowly drawn triggering events which must occur before execution may take place; (2) Those triggering events, from which probable cause arises, must be (a) ascertainable, and (b) preordained . . . ; and finally, (3) No search may occur unless and until the property [is] . . . at that destination.

*Smith*, 124 N.C. App. at 577, 478 S.E.2d at 245.

Thus, in this case, we will consider whether the affidavit supporting the warrant was reliable; whether the information before the trial court was obtained in a reliable manner; whether the triggering events in the warrant were clear and narrowly drawn; whether the triggering events were ascertainable and preordained; and whether the property was at the destination at the time of the warrant's execution.

### D.

As to the affidavit and information before the trial court, the facts before us are very similar to those in *Falbo*. In the case at hand, as in *Falbo*, the police were able to independently confirm a number of statements the informant made: Defendant's name, defendant's address, and defendant's history of drug charges. Further, the trial court had information before it as to the informant's year-long history of purchasing drugs from defendant, as well as the police officers' testimony that they considered this information reliable. This warrant thus was clearly obtained in a manner that passes the first part of the test we have set out in this case.

We now turn to the warrant itself. Per *Smith*, the warrant must contain clear triggering events, those events must be ascertainable and preordained, and no search may have taken place until after those triggering events occurred. These requirements are fulfilled by the language on the face of the warrant.

First, as to the triggering event, the warrant states: "Once the confidential source sees the marijuana being displayed at the residence, he/she will give a prearranged signal that the marijuana has been seen." Further, as to the requirement that no search occur until after the property is at the location, the warrant states: "If the marijuana is successfully seen by the confidential source, the affiant contends there is probable cause to believe that a search of the residence of 2207 Cabin Court, Greensboro[,] North Carolina[,] will result in the discovery of additional controlled substances, evidence of occupancy

and other related material[.]" The warrant is thus also valid under the latter part of the test we have set out in this case.

Because the warrant in this case was obtained in a way consistent with the reasoning we have adopted from *Falbo* and the already-established requirements of *Smith*, we affirm the trial court's denial of defendant's motion to suppress the evidence obtained as a result of executing that warrant.

Affirmed.

Judges CALABRIA and STROUD concur.