**UNITED STATES of America, Appellee,**

v.

**GARCIA, et al., Defendants.**

**Appeal of Jose A. FIGUEROA–RIVERA, Gabriel Grant, Celina Wilson–Grant, Defendants–Appellants.**

**Nos. 1289, 1306, 1334, Dockets 88–1499, 88–1509, 88–1510.**

United States Court of Appeals, Second Circuit.

Argued June 16, 1989.

Decided Aug. 15, 1989.

Cheryl L. Baratta, New York City, for defendant-appellant Jose Figueroa–Rivera.

Donald L. Graham, Miami, Fla. (Raskin & Graham, Miami, Fla., of counsel), for defendant-appellant Celina Wilson–Grant.

Jesse Berman, New York City, for defendant-appellant Gabriel Grant.

Leslie R. Caldwell, Asst. U.S. Atty., for the Eastern District of New York (Andrew J. Maloney, U.S. Atty., for the Eastern District of New York, David C. James, Asst. U.S. Atty., of counsel), for appellee.

Before OAKES, Chief Judge, and VAN GRAAFEILAND and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

The only issue worthy of extended discussion on this appeal is whether government agents may obtain from a magistrate an anticipatory search warrant conditioned upon future events which, if fulfilled, would create probable cause and allow a search of the premises identified in the warrant. Jose A. Figueroa–Rivera (Figueroa), Gabriel Grant, and Celina Wilson–Grant (collectively "the defendants") appeal from judgments after a jury trial before the United States District Court for the Eastern District of New York, Charles P. Sifton, *Judge,* convicting them of various narcotics offenses. On appeal, defendants raise a host of claims, none of which, with the exception of the anticipatory warrant issue, requires a formal opinion. We write therefore only to address whether an anticipatory warrant was proper here.

## BACKGROUND

We recite only the facts necessary to our determination.

Defendants, participants in an operation which smuggled cocaine into the United States from Panama, were indicted in the Eastern District of New York for conspiracy to distribute cocaine, possession of cocaine with intent to distribute, and cocaine importation.

Defendants' operation used as couriers military servicemen stationed in Panama. Periodically, when they obtained leave or came to the United States for government purposes, these couriers—including defendant Figueroa and two other servicemen, Darryl Hooks and Kendell Oliver—obtained the cocaine from Panamanian sources and then smuggled it through Miami to New York, where they delivered it to Grant, Wilson–Grant, or another codefendant in the case, Francisca Caballero.

On one of these courier runs in early February 1988, Hooks and Oliver arrived in Miami from Panama carrying a combined total of thirty-three kilograms of cocaine in their duffel bags. Customs officials noticed that the two servicemen appeared nervous, and after recognizing Oliver's name from a "customs alert list", searched both couriers and discovered the cocaine.

After being flown from Miami to New York to meet with DEA agents, Hooks and Oliver agreed to cooperate with the government and to proceed with a controlled delivery of the cocaine. They then telephoned Wilson–Grant at Caballero's apartment and, after convincing her that they had been legitimately delayed, made arrangements to bring the cocaine to her at that apartment.

On February 4, 1988, before Hooks and Oliver delivered the cocaine, and without any probable cause to believe that contraband was currently located on the premises, DEA agents applied for and received an anticipatory warrant to search Caballero's apartment for cocaine, traces of cocaine, currency, drug records, and narcotics paraphernalia. Execution of this warrant was "contingent upon the delivery of cocaine by [Oliver] and [Hooks]". With the cocaine still in the duffel bags, DEA agents then accompanied Hooks and Oliver to Caballero's apartment, and waited while the couriers approached the door.

After knocking for several minutes, Hooks and Oliver were admitted by Caballero's husband, who informed them that Wilson–Grant was not there, and who gave his permission for them to wait inside. They entered, sat down in the living room, and placed the duffel bags containing the cocaine next to them. Five to ten minutes later, while they were still waiting and before Wilson–Grant or anyone else had taken possession of the duffel bags, the DEA agents entered the premises, announced that they had a warrant to search the apartment, began their search in the living room, and seized the cocaine and duffel bags. Thereafter, upon further search of the apartment, DEA agents found Wilson–Grant in a bedroom and arrested her on drug-trafficking charges, and found other items, including airline stickers in Wilson–Grant's name and Panamanian newspapers.

Before trial, Wilson–Grant moved to suppress the items seized in the search, arguing first, that the anticipatory warrant was void because, at the time it was issued, there was no probable cause to believe that contraband was located in Caballero's apartment, and second, that even if the warrant was validly issued, the condition which governed its execution—that the cocaine be delivered to the premises—had not yet occurred when the DEA agents entered the apartment and conducted the search.

The district court rejected Wilson–Grant's arguments and denied the motion to suppress. At trial, when the evidence was offered by the government, Wilson–Grant renewed her objections, but Judge Sifton overruled them and allowed the items to be admitted.

The jury convicted Wilson–Grant on one count of conspiracy to import cocaine, three counts of cocaine importation, and two counts of possession of cocaine with intent to distribute. It also convicted the remaining defendants on various narcotic charges.

This appeal followed.

## DISCUSSION

Wilson–Grant challenges the refusal of the district court to suppress the evidence obtained by the government agents when they searched Caballero's apartment pursuant to the anticipatory search warrant. Ordinarily, Wilson–Grant, who did not reside at the apartment, might lack standing to make this challenge for lack of any expectation of privacy in the premises. *See Rawlings v. Kentucky*, 448 U.S. 98, 104–05, 100 S.Ct. 2556, 2561–62, 65 L.Ed.2d 633 (1980). At oral argument, however, the government conceded that it had not raised this standing issue in the district court; consequently, it waived the standing argument. *See Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38 (1981) (factual question of whether defendant had reasonable expectation of privacy in the searched dwelling waived by government because it "failed to raise such questions in a timely fashion during the litigation"); *cf. United States v. Persico*, 832 F.2d 705, 715 n. 2 (2d Cir.1987) (where "government concedes that it did not raise [the] issue in the district court, and has offered no justification for its failure to do so" we will "deem the issue to be

waived"), *cert. denied,* —— U.S. ——, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988).

Wilson–Grant challenges the district court's failure to suppress on two fronts. First, she claims that anticipatory warrants are unconstitutional *per se* because they violate the fourth amendment's requirement that all warrants be based on probable cause. Second, Wilson–Grant argues that even if the warrant was valid when it was issued, the police executed the warrant prematurely when they entered and searched the apartment before Hooks and Oliver had delivered the cocaine to Wilson–Grant.

## A. *The Constitutionality of the Anticipatory Warrant.*

Relying upon several decisions holding that, before government agents may obtain a warrant to search a residence for stolen property, they must have probable cause to believe that this property "is located at the residence", *see, e.g., United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983), Wilson–Grant argues that the magistrate invalidly issued the warrant to search Caballero's apartment because, at the time he did so, there was no probable cause to believe that the drugs were then located on the premises. As she correctly points out, the magistrate knew that the drugs were not yet at the apartment, because the affidavit stated that the police were still in possession of them, pending delivery by Hooks and Oliver. Thus, Wilson–Grant concludes, the magistrate violated the fourth amendment when he issued the anticipatory search warrant based, not upon present probable cause, but upon an expectation that, at some point in the future, probable cause would arise when the drugs would be delivered to Caballero's residence.

While there is authority in some other circuits for this position, *see United States v. Hendricks,* 743 F.2d 653, 654 (9th Cir. 1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985); *United States v. Rundle,* 327 F.2d 153, 163 (3d Cir.1964), we think it is unsound. An anticipatory warrant, by definition, is a warrant that has been issued before the necessary

events have occurred which will allow a constitutional search of the premises; if those events do not transpire, the warrant is void.

■ This is not to say, however, that such warrants are not based on probable cause. To the contrary, when a government official presents independent evidence indicating that delivery of contraband will, or is likely to, occur, and when the magistrate conditions the warrant on that delivery, there is sufficient probable cause to uphold the warrant. *United States ex rel. Beal v. Skaff,* 418 F.2d 430, 433–34 (7th Cir.1969). Thus, the fact that the contraband is not "presently located at the place described in the warrant" is immaterial, so long as "there is probable cause to believe that it will be there when the search warrant is executed." *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *see United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989). Nor should it be otherwise, for even a warrant based on a known presence of contraband at the premises rests also on the expectation that the contraband will remain there until the warrant is executed. W. LaFave, *Search and Seizure* 701 (1978).

Based on these principles, a wide variety of state and federal courts have upheld the anticipatory search warrant against constitutional challenge at least where the contraband "is on a sure course to its destination". *United States v. Dornhofer,* 859 F.2d 1195, 1198 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1639, 104 L.Ed.2d 155 (1989); *see also United States v. Goodwin,* 854 F.2d 33, 36 (4th Cir.1988); *United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.), *cert. denied,* 439 U.S. 869, 99 S.Ct. 198, 58 L.Ed.2d 180 (1978); *United States v. Outland,* 476 F.2d 581, 583 (6th Cir.1973); *United States ex rel. Beal v. Skaff,* 418 F.2d 430, 432–34 (7th Cir.1969); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221 (1981); *Johnson v. State,* 617 P.2d 1117 (Alaska 1980);

*State v. Cox,* 110 Ariz. 603, 522 P.2d 29 (1974); *People v. Glen,* 30 N.Y.2d 252, 282 N.E.2d 614, 331 N.Y.S.2d 656 (1972). Significantly, although not expressly reaching the constitutional issue, we too have upheld a search based on an anticipatory warrant that was conditioned upon the controlled delivery of narcotics. *United States v. Segovia,* 800 F.2d 39 (2d Cir.1986).

Courts—though not yet the Supreme Court, to be sure—have upheld the anticipatory warrant, in large part, because they see it as desirable, whenever possible, for police to obtain judicial approval before searching private premises. Indeed, the fourth amendment mandates that, with few exceptions, a warrant be obtained before any search of a dwelling occurs. *See Skinner v. Railway Labor Executives Ass'n,* — U.S. ——, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989).

Yet, one of the major practical difficulties that confronts law enforcement officials is the time required to obtain a warrant. In many instances, the speed with which government agents are required to act, "especially when dealing with the furtive and transitory activities of persons who traffic in narcotics", W. LaFave, *Search and Seizure* 700 (1978) (citation omitted), demands that they proceed without a warrant or risk losing both criminal and contraband. Led by the Supreme Court, federal courts have, of course, recognized an exception to the warrant requirement when "exigent circumstances" exist, but we have narrowly limited this exception. *United States v. Karo,* 468 U.S. 705, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *United States v. Zabare,* 871 F.2d 282 (2d Cir.1989); *Melear v. Spears,* 862 F.2d 1177 (5th Cir.1989); *United States v. Clement,* 854 F.2d 1116 (8th Cir.1988); *United States v. Spinelli,* 848 F.2d 26 (2d Cir.1988).

The question thus posed by this case— and by any challenge to a warrant that is issued in anticipation of delivery of an item upon which the government relies to establish probable cause to search—is whether the objective of the fourth amendment is better served by allowing an agent to obtain a warrant in advance of the delivery, or whether it is better served by forcing him to go to the scene without a warrant, and, if necessary, proceed under the constraints of the "exigent circumstances" exception, subject always to the risk of "being second-guessed" by judicial authorities at a later date as to whether the known facts legally justified the search. W. LaFave, *Search and Seizure* 700–01 (1978).

Based on these considerations, we believe that the purposes of the fourth amendment are best served by permitting government agents to obtain warrants in advance if they can show probable cause to believe that the contraband will be located on the premises at the time that search takes place. We therefore explicitly hold today what we assumed in *Segovia:* Anticipatory warrants are not unconstitutional *per se,* and in the proper circumstances, may be an effective tool, both to fight criminal activity, and to protect individual fourth amendment rights.

This is not to say, however, that government agents may use these warrants without limitation; indeed, we recognize that any warrant conditioned on what may occur in the future presents some potential for abuse. Magistrates and judges should therefore take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search. This means that affidavits supporting the application for an anticipatory warrant must show, not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery. Judicial officers must then scrutinize whether there is probable cause to believe that the delivery will occur, and whether there is probable cause to believe that the contraband will be located on the premises when the search takes place.

Moreover, when an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear, and nar-

rowly drawn so as to avoid misunderstanding or manipulation by government agents.

Finally, as with other search warrants, anticipatory warrants require that a magistrate give careful heed to the fourth amendment's requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." Of course, the scope of the search under an anticipatory warrant should be no narrower than the scope of the search which would be allowed under the "exigent circumstances" exception. But magistrates must also carefully craft anticipatory warrants to limit the scope of the warrant-authorized search to items which law enforcement officers have probable cause to believe are located on the premises. *See Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965) (search warrant must contain descriptions reflecting "the most scrupulous exactitude").

### B. *Delivery to Caballero's Apartment and the Scope of the Search.*

Wilson–Grant also argues that, even if anticipatory warrants are not *per se* unconstitutional, the agents executed this one prematurely when they entered and searched the apartment before Wilson–Grant herself took possession of the duffel bags. This contention is easily answered.

■ Under its own terms, the warrant became valid "upon the delivery of cocaine by [Hooks] and [Oliver]." Nowhere did the warrant require that Wilson–Grant or any one else take possession of the cocaine, nor was there even any requirement that Hooks and Oliver give up possession. Rather, the warrant listed an address that could be searched by government agents as soon as the cocaine was delivered there. Wilson–Grant had agreed to this delivery, and, in fact, was found in the bedroom shortly after the agents entered the apartment. In light of these facts, we have no trouble concluding that when Hooks and Oliver entered the apartment and placed the duffel bags on the floor, there was a "sufficient delivery" to the premises to fulfill the condition of the warrant, thus allowing the agents to search.

■ Although not raised by Wilson–Grant, we also think that, in light of the supporting affidavit, the scope of the search authorized by the anticipatory warrant was sufficiently narrow to be upheld. The warrant allowed the agents to search for cocaine, traces of cocaine, currency, drug records, and narcotics paraphernalia. Had the only evidence been that the duffel bags were being delivered to the apartment, the scope of the search, described in the warrant might have been overbroad. Here, however, additional facts in the supporting affidavit gave rise to probable cause to believe that the apartment was being used as a storage and distribution center for drugs. Hooks and Oliver were given the telephone number of Caballero's apartment while they were still in Panama, and there was evidence that one of them previously had delivered drugs to that apartment. Moreover, federal agents had seen at least one other defendant suspected of drug activity enter and leave the same apartment. Coupled with the delivery of the drugs by Hooks and Oliver according to a plan set by Wilson–Grant, these facts support the broadened scope of the anticipatory warrant.

### CONCLUSION

■ We have carefully considered all of defendants' other arguments and find them to be meritless. Grant's inconsistent verdict claim warrants brief mention because, although this court has often rejected claims of inconsistent verdicts on separate charges against one defendant, we have apparently made no direct statement on jury verdicts which treat two defendants inconsistently. However, the Supreme Court has spoken decisively on this issue:

Inconsistency in a verdict is not a sufficient reason for setting it aside. We have so held with respect to inconsistency between verdicts on separate charges against one defendant, *Dunn v. United States*, 284 U.S. 390 [52 S.Ct. 189, 76 L.Ed. 356] (1932), and also with respect to verdicts that treat codefendants in a

joint trial inconsistently. *United States v. Dotterweich*, 320 U.S. 277 [64 S.Ct. 134, 88 L.Ed. 48] (1943).

*Harris v. Rivera*, 454 U.S. 339, 345, 102 S.Ct. 460, 464, 70 L.Ed.2d 530 (1981); *see United States v. Andrews*, 850 F.2d 1557 (11th Cir.) (en banc) (a conspiracy conviction does not become infirm even if the jury acquits the defendant's sole alleged coconspirator), *cert. denied,* —— U.S. ——, 109 S.Ct. 842, 102 L.Ed.2d 974 (1989).

The judgments are affirmed.