## THE STATE OF NEVADA, Appellant, v. CRAIG S. PARENT, Respondent.

No. 24365

February 4, 1994                              867 P.2d 1143

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney, Washoe County, for Appellant.

*Craig S. Parent,* In Proper Person, Metairie, Louisiana, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal, pursuant to NRS 177.015(2), from an order of the district court granting a pretrial motion to suppress evidence. The district court concluded that evidence gained through use of an allegedly unlawful anticipatory search warrant must be suppressed. This appeal by the state followed.

On July 1, 1992, an anonymous informant telephoned Detective Wygnanski of the Washoe County Consolidated Narcotics Unit. The informant told Wygnanski that respondent Parent would arrive, via Continental Airlines at the Reno Cannon Airport, from New Orleans, on July 3, 1992. The informant stated that Parent would be with two women and he would have cocaine concealed inside a baby powder bottle in his baggage. The informant also provided Wygnanski with a physical description of Parent, his social security number, his FBI number, and his date of birth. Wygnanski confirmed that fact that Parent was scheduled to fly on Continental Airlines to Reno on July 3, 1992. On July 2, 1992, Wygnanski obtained a search warrant from a justice of the peace. Execution of the warrant was conditioned upon the arrival of Continental Airlines flight number 781 from New Orleans on July 3, 1992.

On July 3, 1992, Parent and two women arrived at the Reno Cannon Airport. Police officers observed the threesome once the threesome exited the airplane. Parent played a slot machine and entered the airport bar before retrieving his luggage from the luggage carousel. The police officers arrested Parent shortly after he retrieved his luggage. A police officer found 3.7 grams of cocaine in a baby powder bottle which was located inside one of appellant's bags.

On August 17, 1992, the state filed an information charging Parent with one count of possession of a controlled substance (cocaine). On January 11, 1993, appellant filed in the district court a motion to suppress evidence gained through the use of the search warrant. The state opposed the motion. On May 13, 1993, the district court conducted a hearing on Parent's motion to suppress. The informant was not identified. On May 13, 1993, the district court entered an order granting Parent's motion to suppress evidence gained through the use of the search warrant. This appeal followed. This matter has been submitted on the record.

In his motion to suppress, Parent argued that the justice of the peace improperly issued the search warrant because NRS 179.035 requires that the offense for which the search was obtained be committed before the search warrant issues.[1] In its order granting the motion to suppress, the district court reached the following conclusions: (1) "NRS 179.035 specifically says that the offense must have already been committed before the

---

[1]In his motion, Parent raised additional challenges to the search warrant. Because the district court's order concerned only the fact that the search warrant was issued prior to the time that the offense was committed, we have not addressed the other issues presented in the district court.

search warrant [may issue]''; (2) this court has not adopted the anticipatory search warrant rule; (3) the legislature has not adopted the anticipatory search warrant rule; (4) the search warrant should not have been issued until after Parent arrived in Nevada; and (5) Parent ''could easily have been detained at the airport while a search warrant was sought. The warrant was not appropriately obtained, and, consequently, the evidence must be suppressed.''

NRS 179.035 provides (emphasis added):

A warrant may be issued under NRS 179.015 to 179.115, inclusive, to search for and seize any property:

1. Stolen or embezzled in violation of the laws of the State of Nevada, or of any other state or of the United States;

2. *Designed or intended for use* or which is or has been used *as the means of committing a criminal offense;* or

3. When the property or things to be seized consist of any item or constitute any evidence which tends to show that *a criminal offense has been committed,* or tends to show that a particular person has committed a criminal offense.

During the hearing on the motion to supress, Parent argued that the justice of the peace lacked jurisdiction to issue the search warrant because at the time the search warrant was issued a criminal offense had not been committed within this state. The district court agreed with Parent's argument.

At the time that the justice of the peace issued the search warrant, Parent had not yet entered the State of Nevada and had not yet committed a crime within the State of Nevada. The district court and the parties relied exclusively on NRS 179.035(3) in their analysis of this issue. Although NRS 179.035(3), at least arguably, contains language that might require that a crime actually have been committed at the time a warrant is issued,[2] NRS 179.035(2), which clearly applies to the facts of this case, has no such language. Indeed, NRS 179.035(2) provides statutory authorization for an anticipatory search warrant: ''A warrant may be issued . . . to search for and seize any property . . . intended for use . . . as the means of committing a criminal offense[.]'' The ''intended for use'' language of the statute indicates that it is not necessary that the crime be committed before the magistrate issues the search warrant.

---

[2]One might argue, however, that NRS 179.035(3) requires only that a crime have been committed at the time property is seized; the statute is silent with respect to the timing of the issuance of the warrant, and one might persuasively argue that the Legislature never intended to restrict the issuance of warrants in the manner suggested by respondent. We need not here resolve this issue, however, because NRS 179.035(2) provides a sufficient statutory basis for the issuance of the warrant in this case.

Although the district court is correct in noting that this court has not expressly approved of anticipatory search warrants, the clear weight of authority holds that anticipatory search warrants are not unconstitutional per se. *See e.g.,* United States v. Tagbering, 985 F.2d 946 (8th Cir. 1993); Rivera v. United States, 928 F.2d 592, 602-03 (2nd Cir. 1991); United States v. Wylie, 919 F.2d 969, 974 (5th Cir. 1990); United States v. Garcia, 882 F.2d 699 (2nd Cir.), *cert. denied sub nom.* Grant v. United States, 493 U.S. 943 (1989); United States v. Dornhofer, 859 F.2d 1195 (4th Cir. 1988), *cert. denied,* 490 U.S. 1005 (1989); Johnson v. State, 617 P.2d 1117 (Alaska 1980); State v. Cox, 522 P.2d 29, 34 (Ariz. 1974); State v. Wright, 772 P.2d 250, 256-60 (Idaho Ct.App. 1989).

In addition, the United States Supreme Court implicitly approved of anticipatory search warrants in Katz v. United States, 389 U.S. 347 (1967) and Berger v. New York, 388 U.S. 41 (1967). In those cases, the Court indicated that it was constitutionally possible to obtain a search warrant for the seizure of oral communications through the use of electronic surveillance. Of course, the oral communications to be intercepted would occur after the issuance of the search warrant.

"[T]he purposes of the fourth amendment are best served by permitting government agents to obtain warrants in advance if they can show probable cause to believe that the contraband will be located on the premises at the time that the search takes place. . . . Anticipatory search warrants . . . in the proper circumstances, may be an effective tool, both to fight criminal activity, and to protect individual fourth amendment rights." United States v. Garcia, 882 F.2d 699, 703 (2nd. Cir.), *cert. denied sub nom.* Grant v. United States, 493 U.S. 943 (1989).

Anticipatory search warrants are not unreasonable and are therefore permissible under the Fourth Amendment to the United States Constitution. In *Garcia,* the Second Circuit Court of Appeals provided a model for analysis of whether the issuance of an anticipatory search warrant is proper. We find the analysis persuasive. In that case, the court stated the following:

> [W]e recognize that any warrant conditioned on what may occur in the future presents some potential for abuse. Magistrates and judges should therefore take care to require independent evidence giving rise to probable cause that the contraband will be located at the premises at the time of the search. This means that affidavits supporting the application for an anticipatory warrant must show, not only that the agent believes a delivery of contraband is going to occur, but also how he has obtained this belief, how reliable his sources

are, and what part government agents will play in the delivery. Judicial officers must then scrutinize whether there is probable cause to believe that the delivery will occur, and whether there is probable cause to believe that the contraband will be located on the premises when the search takes place.

Moreover, when an anticipatory warrant is used, the magistrate should protect against its premature execution by listing in the warrant conditions governing the execution which are explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents.

Finally, as with other search warrants, anticipatory warrants require that a magistrate give careful heed to the fourth amendment's requirement that the warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." Of course, the scope of the search under an anticipatory warrant should be no narrower than the scope of the search which would be allowed under the "exigent circumstances" exception.

*Id.* 703-04 (emphasis omitted).

In this case, Officer Wygnanski's oral affidavit in support of the application for an anticipatory search warrant revealed that Wygnanski received a telephone call from an anonymous informant. The informant told Wygnanski that Parent, who resides in New Orleans, is a driver for an organized crime figure named Frank Kerazy. The informant told Wygnanski that Parent is six foot one, a white male with green eyes, brown wavy hair, and a moustache. Further, the informant told Wygnanski that Parent's FBI number is 259273JA1, that Parent has a long criminal history, that Parent would arrive in Reno on July 3rd at approximately 1:26 p.m., on flight number 781, Continental Airlines from New Orleans to Denver, and that Parent would be flying with two women by the names of Jodie and Stephanie. The informant told Wygnanski that Parent would bring approximately four ounces of cocaine which would be packaged in a baby powder bottle and would be disguised within the baby powder.

Wygnanski verified with the State of Louisiana that Parent had prior convictions for aggravated burglary, resisting arrest, causing substantial bodily harm to a police officer, resisting a police officer, first degree murder, armed robbery, aggravated burglary and attempted armed robbery. Parent's FBI record was expunged on September 28, 1989. Wygnanski also verified the fact that Parent would be flying into Reno on July 3rd on Continental Airlines.

The magistrate provided protection against premature execution of the warrant by requiring that the warrant be served only after the arrival of Continental Airlines flight number 781 from New Orleans on July 3, 1992. Finally, the warrant particularly described the place to be searched and persons or things to be seized. The warrant provided that the evidence to be seized consisted of cocaine, packaging materials, U.S. currency, and writings with names, addresses or phone numbers. The warrant provided that the police were permitted to search all luggage, purses, personal clothing, and the persons of the three suspects at the Reno Cannon Airport.

The issuance of the anticipatory search warrant and subsequent search in this case were authorized by state statute and did not violate the Fourth Amendment to the United States Constitution. The district court erred in suppressing the evidence obtained as a result of the search. Accordingly, we reverse the order of the district court suppressing evidence obtained through use of the search warrant and remand this matter to the district court for further proceedings consistent with this opinion.