**STATE of Utah, Plaintiff and Appellee,**

v.

**Roy WOMACK, Defendant and Appellant.**

**No. 971539–CA.**

Court of Appeals of Utah.

Oct. 22, 1998.

Michael D. Esplin, Aldrich, Nelson, Weight & Esplin, Provo, for Defendant and Appellant.

C. Kay Bryson, Utah County Attorney and Laura Cabanilla, Utah Deputy County Attorney, Provo, for Plaintiff and Appellee.

Before WILKINS, Associate P.J., and BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Roy Womack challenges the trial court's denial of his motion to suppress evidence and his consequent conviction for possession of a controlled substance in a drug-free zone, in violation of Utah Code Ann. §§ 58–37–8(2)(a)(i) and 58–37–8(5)(a) (1996), following a conditional guilty plea under *State v. Sery,* 758 P.2d 935, 939 (Utah Ct.App.1988) (holding conditional plea valid when court and prosecutor accept agreed-upon condition). We affirm.

## BACKGROUND

On February 21, 1996, United Parcel Service (UPS) tried to deliver a package sent from California to Roy Womack at 120 West 1200 North in Orem, Utah, which turned out to be a wrong address. UPS employees then searched for Womack in the telephone book and found a Womack family listed in Orem. Although the listing did not show a "Roy Womack," UPS delivered the package to the listed Womack family. That family opened the package and found about an ounce of marijuana among its contents. They gave the package to the Orem City Police Department.

Six days later, UPS received a telephone call from Eileen O'Hara, the return addressee on the package. O'Hara was told the package had been delivered to another address, and she gave a corrected address of 127 West 1200 North in Orem. Also on that day, Roy Womack visited the Womack family and was told the package was not there.

The Orem police determined that a couple named the Greens lived at the new address given by O'Hara. The police planned a controlled delivery of the package to the home at that address and sought a search warrant allowing them to search the home after the delivery. Based on the affidavit of Sergeant Jerry Harper, the magistrate signed the search warrant.

Police officers then took the package to the home and had a UPS employee deliver it. The person who answered the door said he was Roy Womack and signed for the package. The UPS employee told the police, who then executed their warrant. The police searched the home and arrested Roy Womack, who had the package and marijuana.

After the trial court denied Womack's motion to suppress the evidence seized under the search warrant, Womack pleaded no contest to possession of a controlled substance in a drug-free zone with the condition that he could appeal the trial court's denial of his motion. On appeal, Womack argues that "anticipatory warrants," like the warrant in this case, violate Utah Code Ann. § 77–23–202 (1995). Alternatively, he contends the search warrant was not supported by probable cause.

## ANALYSIS

"Anticipatory search warrants are peculiar to property in transit." *United States v. Leidner,* 99 F.3d 1423, 1425 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1434, 137 L.Ed.2d 542 (1997). Such warrants are "based upon an affidavit showing probable cause that at some future time (but not presently) certain evidence of crime will be located at a specified place." 2 Wayne H. La-Fave, *Search and Seizure* § 3.7(c), at 362 (3d ed.1996). The validity of anticipatory warrants is a matter of first impression in Utah, one which we must address before we reach Womack's arguments.

■ Accordingly, we join the overwhelming majority of jurisdictions in recognizing that anticipatory search warrants are not per se unconstitutional.[1] *See United States v.*

---

1. The constitutionality of search warrants is gauged by the Fourth Amendment to the United States Constitution, which states,

    The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but by probable cause, supported by Oath or affirmation, and particularly describing the place to

    be searched, and the persons or things to be seized.

    The search and seizure provision of the Utah Constitution essentially mirrors the Fourth Amendment. *See* Utah Const. art. I, § 14. Although Womack states as an issue in his brief the question of whether anticipatory warrants violate the Utah Constitution, he does not analyze the issue, as demanded by Utah Rule of Appellate

*Rowland,* 145 F.3d 1194, 1200 (10th Cir. 1998); *Leidner,* 99 F.3d at 1426; *United States v. Ricciardelli,* 998 F.2d 8, 11 (1st Cir.1993); *United States v. Tagbering,* 985 F.2d 946, 950 (8th Cir.1993); *United States v. Wylie,* 919 F.2d 969, 975 (5th Cir.1990); *United States v. Garcia,* 882 F.2d 699, 702–04 (2d Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Goodwin,* 854 F.2d 33, 36 (4th Cir. 1988); *United States v. Goff,* 681 F.2d 1238, 1240 (9th Cir.1982); *United States v. Lowe,* 575 F.2d 1193, 1194 (6th Cir.1978); *United States v. Garnett,* 951 F.Supp. 657, 662 n. 7 (E.D.Mich.1996); *In re Oswalt,* 686 So.2d 368, 369–70 (Ala.1996); *Johnson v. State,* 617 P.2d 1117, 1124 (Alaska 1980); *State v. Cox,* 110 Ariz. 603, 522 P.2d 29, 31 (Ariz.1974); *Alvidres v. Superior Court,* 12 Cal.App.3d 575, 90 Cal.Rptr. 682, 686 (Ct.App.1970); *Bernie v. State,* 524 So.2d 988, 991 (Fla.1988); *Danford v. State,* 133 Ga.App. 890, 212 S.E.2d 501, 501–02 (Ga.1975); *State v. Wright,* 115 Idaho 1043, 772 P.2d 250, 256–57, 258 (Idaho Ct.App.1989) (main opinion, Swanstrom, J., specially concurring, Burnett, J., specially concurring); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221, 224 (Mass.1981); *State v. Morrison,* 243 Neb. 469, 500 N.W.2d 547, 556 (Neb.1993); *State v. Parent,* 110 Nev. 114, 867 P.2d 1143, 1145 (Nev.1994); *State v. Canelo,* 139 N.H. 376, 653 A.2d 1097, 1100 (N.H.1995); *State v. Mier,* 147 N.J.Super. 17, 370 A.2d 515, 517 (N.J.Super.Ct.App.Div.1977); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, 615 (N.Y.), *cert. denied,* 409 U.S. 849, 93 S.Ct. 58, 34 L.Ed.2d 91 (1972); *State v. Smith,* 124 N.C.App. 565, 478 S.E.2d 237, 241 (N.C.Ct.App.1996); *State v. Folk,* 74 Ohio App.3d 468, 599 N.E.2d 334, 337–38 (Ohio Ct.App.1991); *Commonwealth v. Reviera,* 387 Pa.Super. 196, 563 A.2d 1252, 1254–55 (Pa.Super.Ct.1989); *State v. Engel,* 465 N.W.2d 787, 789 (S.D.1991); *State v. Coker,* 746 S.W.2d 167, 172 (Tenn.1987), *cert. denied,* 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988); *McNeill v. Commonwealth,* 10 Va. App. 674, 395 S.E.2d 460, 463 (Va.Ct.App. 1990); *State v. Meyer,* 216 Wis.2d 729, 576 N.W.2d 260, 266 (Wis.1998); *see also* 2 LaFave, *supra,* § 3.7(c), at 364 ("The better view ... is ... and the recent cases have consistently held that anticipatory warrants are not inherently beyond the warrant process permitted by the Fourth Amendment.").

Along with these jurisdictions, we embrace the important policy considerations underlying anticipatory warrants: They "balance the need to protect the subjects of searches from the abuses of warrantless searches (under the exigent circumstances exception) and the practical needs of law enforcement personnel." *United States v. Dennis,* 115 F.3d 524, 529 (7th Cir.1997). The California Court of Appeals articulated this balance well when it said:

> The speed with which law enforcement is often required to act, especially when dealing with the furtive and transitory activities of persons who traffic in narcotics, demands that the courts make every effort to assist law enforcement in complying with the edicts that the courts themselves have issued.
>
> We must ask ourselves whether the objective of the rule is better served by permitting officers under circumstances similar to the case at bar to obtain a warrant in advance of the delivery of the narcotic or by forcing them to go to the scene without a warrant and there make a decision at the risk of being second-guessed by the judiciary if they are successful in recovering evidence or contraband. We believe that achievement of the goals which our high court had in mind in adopting the exclusionary evidence rule is best attained by permitting officers to seek warrants in advance when they can clearly demonstrate that their right to search will exist within a reasonable time in the future.

*Alvidres,* 90 Cal.Rptr. at 686; *see also State v. Collard,* 810 P.2d 884, 886 (Utah Ct.App. 1991) (stating " '[a] grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted

Procedure 24(a)(9) (requiring proper legal argument regarding issues presented). We therefore decline to address the Utah Constitution in our analysis. *See Drazich v. Lasson,* 964 P.2d 324, 326 (Utah Ct.App.1998).

pursuant to a warrant" (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983))).

Further, the facts set forth to support an anticipatory warrant are generally more apt to show that there will be probable cause when the search occurs than the usual warrant grounded exclusively on the knowledge that the objects to be searched for were previously at the search site. *See* 2 LaFave, *supra*, § 3.7(c), at 366. For example, searched-for contraband is more likely to be in place at the time of a search when police plan to deliver contraband to a certain place than when an informant simply reports to police that he or she has seen contraband in a certain place sometime in the past few days.

## I. STATUTORY VALIDITY OF ANTICIPATORY WARRANTS

Womack contends that, even if anticipatory warrants are not per se unconstitutional, they are forbidden by Utah Code Ann. § 77–23–202 (1995), which reads:

> Property or evidence may be seized pursuant to a search warrant if there is probable cause to believe it:
>
> (1) *was* unlawfully acquired or *is* unlawfully possessed;
>
> (2) *has been* used or *is* possessed for the purpose of being used to commit or conceal the commission of an offense; or
>
> (3) *is* evidence of illegal conduct.

(Emphasis added.) Focusing on the past and present tense language, Womack asks us to construe this section to require that property or evidence be located at the place to be searched when the search warrant is signed, thus banning anticipatory warrants.

■ Statutory interpretation presents a question of law which we review for correctness. *See State v. Powell*, 957 P.2d 595, 596 (Utah 1998). "When interpreting a section of the Utah Code, we are guided by the principle that a statute is generally construed according to its plain language." *State v. Thurman*, 911 P.2d 371, 373 (Utah 1996).

■ We do not read the plain language of Utah Code Ann. § 77–23–202 (1995) to thwart the anticipatory warrant in this case. We first note Utah's definition of "probable cause," which is "a 'fair probability' that evidence of the crime *will be* found in the place or places named in the warrant." *State v. Thurman*, 846 P.2d 1256, 1260 (Utah 1993) (emphasis added). The definition thus speaks in future tense—i.e., it speaks of the probability that evidence will be at the search location when the warrant is executed. The validity of anticipatory warrants under our statute is emphasized by substituting the definition of probable cause for the term probable cause in section 77–23–202: "Property or evidence may be seized pursuant to a search warrant if there is ['a "fair probability" that evidence of the crime *will be* found in the place or places named in the warrant,' *see id.* (emphasis added) ]." Utah Code Ann. § 77–23–202 (1995).

Together with the above prefatory clause, subsection three's broad language easily includes the type of evidence that was seized in this case: "Property or evidence may be seized pursuant to a search warrant if there is probable cause to believe it . . . *is evidence of illegal conduct.*" *Id.* § 77–23–202(3) (emphasis added). This wording does not limit the evidence of illegal conduct to the specific illegal conduct with which it is anticipated that the subject of the search warrant will be charged.

■ For instance, in this case, it strikes us that the existence of marijuana in a package being mailed from one private party to another is per se "evidence of illegal conduct." After all, marijuana is obviously an illegal drug, and it is obviously illegal for one person to give or sell it to another person. As the California Court of Appeals stated regarding parallel facts with similar statutory language, "It is not open to question that the parcel was evidence of a crime having been committed and in fact in the continuing process of being committed." *Alvidres v. Superior Court*, 12 Cal.App.3d 575, 90 Cal.Rptr. 682, 685 (Ct.App.1970) (interpreting Cal.Penal Code § 1524 (West 1970)); *see also McNeill v. Commonwealth*, 10 Va.App. 674, 395 S.E.2d 460, 463 (Va.Ct.App.1990) ("We

reject the contention that in the case before us no crime was in progress when the contraband was placed with UPS in Florida with direction that it be delivered to appellant in Virginia."); *cf. People v. Brake,* 208 Mich. App. 233, 527 N.W.2d 56, 60 (Mich.Ct.App. 1994) (declining to address anticipatory warrant's constitutionality because court concluded facts did not involve such warrant, but determining probable cause based on current circumstances exists "[w]hen the affidavit shows that an identified individual ... anticipates receiving[ ] specific contraband through the mail at a particular location"). Accordingly, we conclude the trial court correctly interpreted Utah's statute to allow anticipatory warrants.[2]

2. Other state courts have also interpreted their state statutes to allow anticipatory warrants. *See Johnson v. State,* 617 P.2d 1117, 1124 (Alaska 1980) (stating anticipatory warrants "are not precluded by the statutory authority of [Alaska Statutes] 12.35.020(3) which requires only reasonable belief of possession of the item for issuance of the warrant, without specifying that possession must be contemporaneous with the issuance, as distinct from the execution, of the warrant" and construing statute "to encompass possession at the time of execution of the warrant, thus permitting the securing of anticipatory search warrants"); *Commonwealth v. Soares,* 384 Mass. 149, 424 N.E.2d 221, 225 (Mass. 1981) ("We think that the essential question under [our statute], as under the Fourth Amendment, is whether 'the evidence [stated in the affidavit] creates substantial probability that the seizable property will be on the premises when searched.' In accordance with this standard of probable cause, we read [our statute] to permit search warrants to issue on a showing that concealment or possession is probable at the time a warrant is to be executed, and not solely at the time of its issuance." (Citation omitted.)); *State v. Parent,* 110 Nev. 114, 867 P.2d 1143, 1144–45 (Nev.1994) (stating, in case in which statute allows warrants to seize property "intended for use ... as the means of committing a criminal offense," that "[t]he 'intended for use' language ... indicates that it is not necessary that the crime be committed before the magistrate issues the search warrant"); *People v. Glen,* 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614, 618 (N.Y.1972) (interpreting applicable statutory language to contain no "requirement of present possession of the seizable property"); *State v. Smith,* 124 N.C.App. 565, 478 S.E.2d 237, 241 (N.C.Ct.App.1996) (interpreting state constitution's language to mean "there need only be 'probable cause to believe that a crime has been [or is being] committed and that evidence of it can likely be found at the described locus at the time of the search" (alteration in original)).

Womack cites to three cases from other states that do not allow anticipatory warrants and, which, he argues, "have statutory provisions regarding search warrants that are similar to that of Utah." He starts with the Arizona case of *State v. Berge,* 130 Ariz. 135, 634 P.2d 947 (Ariz.1981), which is factually similar to the case at bar and in which the Arizona Supreme Court invalidated an anticipatory warrant. First, we note that Arizona has upheld anticipatory warrants in at least two other cases. *See State v. Cox,* 110 Ariz. 603, 522 P.2d 29, 34 (Ariz.1974); *Mehrens v. State,* 138 Ariz. 458, 675 P.2d 718, 719–22 (Ariz. Ct.App.1983), *cert. denied,* 469 U.S. 870, 105 S.Ct. 219, 83 L.Ed.2d 149 (1984). Second, *Berge* involved a caselaw analysis, not a statutory analysis; the Arizona Supreme Court simply chose not to see the lone fact that drugs were packaged and shipped to be evidence of a crime, as we do.

Womack next cites *State v. Poirez,* 904 P.2d 880 (Colo.1995), in which the Colorado Supreme Court specifically held that anticipatory warrants violate state statutory law. The controlling section reads:

(1) A search warrant shall issue only on affidavit sworn to or affirmed before the judge and relating facts sufficient to:

. . .

(d) Establish probable cause to believe that the property to be searched for, seized, or inspected is located at, in, or upon the premises, person, place, or thing to be searched.

Colo.Rev.Stat. § 16–3–303(1)(d) (1986). The court ruled that "the present tense language 'is located at' requires probable cause to believe that the evidence is located on the premises at the time a magistrate issues a warrant," not "an expectation that the evidence will be there prior to search." *Poirez,* 904 P.2d at 882. However, this statutory language is distinguishable from ours, when read with our definition of probable cause. Our statute does not say that property must already be in place for probable cause to exist when the warrant is issued; it says that probable cause can exist when there is a "fair probability" that evidence *will be* in place when seized. *See* Utah Code Ann. § 77–23–202 (1995).

Finally, Womack cites *State v. Ross,* 168 Ill.2d 347, 213 Ill.Dec. 672, 659 N.E.2d 1319 (Ill.1995), in which, on facts similar to those here, the Illinois Supreme Court determined that anticipatory warrants violate state statute. *Id.* 213 Ill. Dec. 672, 659 N.E.2d at 1320–21. Based on probable cause, Illinois's statute allows seizure of " '[a]ny instruments, articles or things which have been used in the commission of, or which may constitute *evidence of, the offense in connection with which the warrant is issued.'* " *Id.* 213 Ill.Dec. 672, 659 N.E.2d at 1320 (quoting 725 Ill. Comp. Stat. 5/108–3(a)(1) (West 1992)) (emphasis added). We stress the different statutory language in Illinois. It states that the items to be seized must be evidence of the offense for which the warrant is issued—i.e., possession of drugs by the person receiving the package. On the other hand, as we have discussed, our statute

## II. VALIDITY OF THE WARRANT IN THIS CASE

■ Womack further argues that, even if anticipatory warrants are not per se invalid under the Constitution and Utah law, the warrant in this case is void for lack of probable cause in the supporting affidavit. "Our review of the affidavit in support of the search warrant focuses on whether the 'magistrate had a substantial basis for concluding that there were. enough facts within the affidavit to find that probable cause existed.'" *State v. Jackson,* 937 P.2d 545, 547 (Utah Ct.App.) (quoting *State v. Collard,* 810 P.2d 884, 885 (Utah Ct.App.1991)), *cert. granted,* 945 P.2d 1118 (Utah 1997). We therefore review the affidavit as a whole and with a "common sense" orientation, deferring to the magistrate's decision. *Id.*

■ "[T]he two general requirements for a valid anticipatory warrant are (1) that it be supported by probable cause and (2) that the warrant or supporting affidavit clearly set out conditions precedent to the warrant's execution." *United States v. Rowland,* 145 F.3d 1194, 1201 (10th Cir.1998). Although Womack has not explicitly challenged the existence of a condition precedent in the affidavit and warrant, his argument seems to intertwine the condition precedent, or triggering event, with his probable cause analysis; we therefore discuss both requirements.

### A. PROBABLE CAUSE

"Anticipatory warrants differ from traditional search warrants in that at the time of issuance they are not supported by probable cause to believe that contraband is currently located at the place to be searched." *United States v. Rowland,* 145 F.3d 1194, 1201 (10th Cir.1998). Indeed, anticipatory warrants are issued with the awareness that the evidence is not presently in place. *See id.* As with

other search warrants, however, anticipatory warrants must be supported by probable cause. *See id.* "[B]efore issuing an anticipatory warrant the magistrate must determine, based on the information presented in the warrant application, that there is probable cause to believe the items to be seized will be at the designated place when the search is to take place." *Id.*

■ Probable cause to support anticipatory warrants is conditioned "on the occurrence of certain expected or 'triggering' events, typically the future delivery, sale, or purchase. of contraband." *Id.* In determining whether probable cause exists, the magistrate therefore "must 'take into account the likelihood that the triggering event[s] will occur on schedule and as predicted.'" *Id.* (quoting *United States v. Ricciardelli,* 998 F.2d 8, 11 (1st Cir.1993)). An anticipatory warrant is invalid if the "triggering event" does not arise. *Id.*

■ Along with assessing the probability that certain triggering events will happen, the magistrate must also evaluate the probability that, following the triggering events, the evidence will be in the named place when the search warrant is executed. *See id.* As with any warrant, probable cause for an anticipatory warrant " 'does not exist unless a sufficient nexus between the [contraband] and the place to be searched exists.'" *Id.* (quoting *United States v. Dennis,* 115 F.3d 524, 530 (7th Cir.1997)).

### B. CONDITIONS PRECEDENT

■ Because the probable cause underlying an anticipatory warrant depends on whether certain events occur, the warrant or affidavit must state conditions allowing the search to be done only after those expected events occur. *See United States v. Rowland,*

---

does not limit the evidence of illegal conduct to that future illegal conduct of the person receiving the package. The illegal conduct may be the conduct of the person sending contraband or the conduct of the future package recipient in attempting to receive drugs.

As an aside, we note the Illinois Legislature has changed the statute to specifically allow anticipatory warrants. The statute now allows seizure of

[a]ny instruments, articles or things designed or intended for use or which arc or have been used in the commission of, or which may constitute evidence of, the offense in connection with which the warrant is issued; or contraband, the fruits of crime, or things otherwise criminally possessed.

725 Ill. Comp. Stat. 5/108–3 (Michie Supp. 1998) (effective Aug. 18, 1995).

145 F.3d 1194, 1201 (10th Cir.1998). "This not only ensures against premature execution of the warrant, but also maintains judicial control over the probable cause determination and over the circumstances of the warrant's execution." *Id.* at 1202 (citations omitted). Consistent with these goals, the conditions controlling the warrant's execution "should be 'explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents.'" *Id.* (quoting *United States v. Garcia,* 882 F.2d 699, 703–04 (2d Cir.1989)). Even so, the specificity with which the magistrate should state the conditions dictating the warrant's execution will shift depending on the facts of each case. *See id.*

■ Though the stated conditions assure that an anticipatory warrant will not be prematurely executed, those conditions do not supplant the magistrate's probable cause decision. *See id.* An anticipatory warrant may not validly be based entirely on conjecture that contraband will be found somewhere at some future time, even though the warrant states that police will not search until the triggering event occurs. *See id.*

■ In short, the magistrate must not abandon the juristic role of assessing probable cause by depending on police guarantees that the search will not be done unless there is probable cause. *See id.* The magistrate must instead demand that police specifically show, on the facts existing when the magistrate issues the warrant, that the evidence to be confiscated will be at the named place when the search occurs. *See id.*

## C. ANTICIPATORY WARRANTS BASED ON DELIVERY OF CONTRABAND

■ When a warrant application states a government-controlled delivery of contraband will be made to the search location, probable cause for a search is shown and the magistrate may issue an anticipatory warrant, "provided the warrant's execution is conditioned on the contraband's delivery to, or receipt at, the designated place." *United States v. Rowland,* 145 F.3d 1194, 1202 (10th Cir.1998). In situations when the warrant

affidavit describes a controlled delivery of contraband to the search location, the nexus criterion of probable cause is fulfilled, and the affidavit need not give further discrete proof connecting the search location with criminal actions. *See id.* at 1202–03.

■ Many courts have held that, to establish the nexus required for probable cause before the warrant is issued, the warrant application must show "the contraband is 'on a sure and irreversible course to its destination.'" *Id.* at 1203 n. 3 (quoting *United States v. Ricciardelli,* 998 F.2d 8, 12–13 (1st Cir.1993)). The sure-course requirement has been explained

> "as a proxy for the actual presence of the contraband at the locus to be searched. It offers the magistrate a trustworthy assurance that the contraband, though not yet on the site, will almost certainly be located there at the time of the search, thus fulfilling the requirement of future probable cause."

*Id.* (quoting *Ricciardelli,* 998 F.2d at 13).

In controlled-delivery situations when the contraband is to be delivered directly to the search location, the sure-course standard is ordinarily fulfilled. *See id.* Indeed, in *United States v. Hugoboom,* 112 F.3d 1081 (10th Cir.1997), involving a police-controlled delivery of contraband directly to the defendant's home, the Tenth Circuit held those facts plainly satisfied the sure-course requirement. *See id.* at 1086–87. The Tenth Circuit does not explicitly require the use of the sure-course standard, however, and merely "recognize[s] that [it] is one way of satisfying the traditional nexus requirement of probable cause." *Rowland,* 145 F.3d at 1203 n. 3.

## D. APPLYING THE LAW

■ The facts of this case meet the sure-course standard, and, thus, without further analysis, satisfy the probable-cause requirement that a nexus exist between the contraband and the search location. The police affidavit specifies,

> It is your affiant's desire to make a "controlled United Parcel Service delivery" of this package to the residence [127 West 1200 North, Orem, Utah] indicated by the

shipping party. Your affiant would like to conduct a search of the residence and the person of individuals present immediately following the delivery to recover the narcotics and associated evidence while determining who received the drugs.

Because the police had the package when they applied for the warrant and stated plans for a controlled delivery of the package, the magistrate could reasonably conclude the marijuana would be at the Orem address when the search took place, establishing the necessary nexus for probable cause.

■ Although we hold there is a nexus in this case, we address Womack's further contentions—without citation to authority—that probable cause was lacking (1) because the condition precedent, or triggering event, for executing the warrant was not more narrowly drawn by requiring the delivery to be made specifically to him,[3] and (2) because the police did not investigate to ensure he lived at the place to be searched. However, our survey of anticipatory warrant cases reveals that, while in some cases the affidavit or warrant specifies delivery to a certain person, see, e.g., *United States v. Moetamedi*, No. 92–CR–411, 1993 WL 147461, 1993 U.S. Dist. LEXIS 6311, at *3–*5 (N.D.N.Y. May 5, 1993); *State v. Mier*, 147 N.J.Super. 17, 370 A.2d 515, 516 (N.J.Super.Ct.App.Div.1977); *McNeill v. Commonwealth*, 10 Va.App. 674, 395 S.E.2d 460, 461 (Va.Ct.App.1990), or that police verified who lived at the address in question, see, e.g., *United States v. Becerra*, 97 F.3d 669, 670 (2d Cir.1996); *United States v. Outland*, 476 F.2d 581, 582 n. 1 (6th Cir.1973); *United States ex rel. Beal v. Skaff*, 418 F.2d 430, 432 (7th Cir.1969), these police practices are not necessary to show probable cause.[4] We agree.

For example, without discussing the specific point Womack raises, the Tenth Circuit upheld an anticipatory warrant "to be issued with its execution contingent upon the delivery of the parcel to a responsible adult at the residence ... who willingly 'accept[s] delivery' and signs a receipt therefor." *United States v. Hugoboom*, 112 F.3d 1081, 1083 (10th Cir.1997); see also *Commonwealth v. DiGiovanni*, 428 Pa.Super. 81, 630 A.2d 42, 43 (Pa.Super.Ct.1993) (upholding search following controlled delivery in which package was left with someone other than addressee). Thus, in *Hugoboom*, it was unnecessary for probable cause purposes that the specific addressee accept delivery of the package.

Further, *Hugoboom*'s facts do not mention that the police investigated the address on the package to determine who officially lived there and whether the addressee was a resident, as Womack urges probable cause requires. See *Hugoboom*, 112 F.3d at 1082–84. Law enforcement personnel merely found a package containing contraband, planned a controlled delivery to a person at the address, obtained a search warrant to execute after the delivery, made the delivery, then did their search under the warrant. See *id*. In sustaining the warrant's validity, the court commented that probable cause does not require " 'independent evidence' of drug activities being carried on at [the address]." *Id*. at 1086. Similarly, we believe that probable cause does not require " 'independent evidence' " of the identity of residents at the address to be searched. *Id*.

Moreover, in *United States v. Lawson*, 999 F.2d 985 (6th Cir.), cert. denied, 510 U.S. 1001, 114 S.Ct. 574, 126 L.Ed.2d 473 (1993), as in the case at bar, the defendant attacked the warrant affidavit because "the affidavit did not contain results of surveillance of the address, nor did it contain information from

---

**3.** The triggering-event language in the warrant states that the police "are hereby directed following delivery [to 127 West 1200 North, Orem, Utah] of the UPS package containing marijuana described in the affidavit to conduct a search of the residence to which the package is delivered."

**4.** One case upholding such a warrant involved a package addressed to a Ms. Ajoke Olushola, while the residents at the address were discovered to be Ronald Eugene Washington, Dorothy

Granderson, and Tijuana Reese. The defendant, Washington, essentially argued that this discrepancy should have tipped the scales against probable cause. See *United States v. Washington*, 852 F.2d 803, 803 (4th Cir.1988). The discrepancy was summarily dismissed by the court, which stated, "It is common knowledge that fictitious names are frequently used in illicit drug trafficking." *Id*. at 804.

546

other law enforcement agencies containing [the defendant's] known or suspected drug activities." *Id.* at 987. Also like Womack, the defendant in *Lawson* complained that "'the sole link between [himself] and the alleged drug trafficking activities was his name as the addressee on the package, confirmed by his receipt of the package.'" *Id.* Notwithstanding, the Sixth Circuit concluded that probable cause supported the search. *See id.* at 988.

The court stated that other circuits' cases "may be read to stand for the proposition that a warrant to search an address may be based solely on the fact that a package containing illegal substances is on a 'sure course' to its destination (as in the mail)." *Id.* (citing *United States v. Rey*, 923 F.2d 1217, 1220–21 (6th Cir.1991); *United States v. Washington*, 852 F.2d 803, 804 (4th Cir.), *cert. denied*, 488 U.S. 974, 109 S.Ct. 512, 102 L.Ed.2d 547 (1988)). However, the court noted that it need not go that far in *Lawson* because "there were additional facts in the magistrate's consideration of the 'totality of the circumstances.'" *Id.* Those additional facts were as follows:

> The magistrate judge was in a position to determine that one does not send six ounces of cocaine through the mail to a specific address on a whim [because it was enough for resale]. The magistrate judge also knew through the affidavit that the cocaine in the package was concealed in an attempt to avoid detection. This factor makes it less likely that the defendant was "set up" by someone and more likely that the cocaine was intended to reach its destination undetected. All of the information contained in the affidavit could reasonably lead a person to conclude that an experienced trafficker in narcotics sent the package in question. Consequently, it was very

likely the address on the package was the one at which it was intended to arrive. *Id.*

■ Likewise, in this case, "there were additional facts in the magistrate's consideration of the 'totality of the circumstances.'" *Id.* As in *Lawson*, the magistrate "was in a position to determine that one does not send [one ounce of marijuana] to a specific address on a whim." *Id.* The affidavit contained a statement that drugs are often shipped for resale and that an ounce is often divided into eighths and resold. Further, the affidavit stated that Eileen O'Hara, the return addressee on the package, called UPS on February 27, 1996, to ask why the package had not yet been delivered. O'Hara was "very irate concerning the delivery of her package" and gave a corrected address of 127 West 1200 North, while leaving the addressee as Roy Womack. During the phone call, UPS told her where the package had originally been delivered. In their eagerness to retrieve the package for Roy Womack, both O'Hara and Roy Womack separately contacted the other Womack family to whom the package was erroneously delivered. This information could reasonably lead the magistrate to conclude that O'Hara and Womack were indeed connected and working together to ensure the package got to Womack. Womack apparently had no other way of knowing that the package had been delivered to the other Womack family and what their address was without being told by O'Hara. This "makes it less likely that [Womack] was 'set up.'" *Id.* Moreover, with the information about the corrected address, the magistrate could reasonably conclude that the package was not sent to the address mistakenly. And, with the details about O'Hara's and Womack's concern over the package and attempts to recover the package, the magistrate could reasonably conclude that both were aware of the "importance" of the package contents and that they had the common goal of getting the package into Womack's hands; Womack was not an innocent target.[5]

---

5. This leads us to discuss the policy concerns that Womack raises regarding anticipatory warrants—the idea that innocent people could be victimized by someone sending contraband, then alerting authorities, who could then search the innocent people's homes. As the *Lawson* court recognized, "These concerns are extremely remote, especially in the context of a controlled

delivery of a quantity of drugs presumptively sufficient to constitute possession for resale." *United States v. Lawson*, 999 F.2d 985, 988 (6th Cir.1993). Remote as they are, however, the concerns are real and should be borne in mind on the facts of each case. Still, "the magistrate 'was entitled to give considerable weight to [the officer's] conclusions and inferences regarding

"[I]t was very likely the address on the package was the one at which it was intended to arrive." *Id.*

Thus, although we follow the Tenth Circuit in determining a probable-cause nexus to search the Orem home existed based on the simple fact of a package containing contraband being shipped to that location, like the *Lawson* court, we need not rest entirely on that fact. *See id.* Despite Womack's contentions, the other facts listed above, in addition to the information obtained solely from the package, support the magistrate's probable-cause determination.

## CONCLUSION

We recognize for the first time that anticipatory warrants are not per se unconstitutional in Utah. Further, we conclude that anticipatory warrants are allowed under

what would be found at the residence, based on his experience with and training in narcotics trafficking.' " *Id.*

**6.** Based on our analysis, we need not address the State's argument that police officers acted in

Utah Code Ann. § 77–23–202 (1995). Finally, we uphold the magistrate's determination that sufficient facts existed in the affidavit showing probable cause to support the search warrant in this case. Accordingly, we affirm the magistrate's denial of Womack's motion to suppress the evidence and, thus, Womack's conviction.[6]

WILKINS, Associate P.J., concurs.

BILLINGS, J., concurs in Part I and concurs in the result in Part II.

"good faith" on the issued search warrant. *See State v. Horton,* 848 P.2d 708, 711 (Utah Ct.App. 1993).